**UNITED STATES of America, Appellee,**

v.

**William DUDLEY, Appellant.**

No. 83–5267.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1984.

Decided July 23, 1984.

Fred Warren Bennett, Federal Public Defender, Baltimore, Md., for appellant.

J. Frederick Motz, U.S. Atty., Baltimore, Md., for appellee.

Before HALL and MURNAGHAN, Circuit Judges, and KAUFMAN,* District Judge.

MURNAGHAN, Circuit Judge:

Occasionally we face a case raising novel questions with potentially far-reaching consequences. For us to accord the attention that the instant case, fitting in that category, deserves, we must at the outset mention and dispose of several routine, uncontested matters. The decks should be cleared in preparation for an approaching engagement of some significance.

Indicted on six counts (One, "conspiracy to use ... food stamp coupons," Two through Five, "unlawful use ... of food stamp coupons" and Six, "distribution of Demerol"), William Dudley was found guilty as to all in a trial by jury lasting

---

* The Honorable Frank A. Kaufman, United States District Judge for the District of Maryland, sitting by designation.

from July 14 through July 29, 1983. On October 19, 1983, concurrent sentences of four years on each count were imposed and a fine of $10,000 was levied with respect to Count 1.

Furthermore, in application of 18 U.S.C. § 3579, the district judge imposed an order of restitution requiring payment to the United States Department of Agriculture of the sum of $4,807.50. A special parole term of four years also was meted out on Count 6. During the pendency of the present timely appeal, Dudley died on December 17, 1983. Counsel who had represented Dudley filed a motion pursuant to F.R.A.P. 42(b) to dismiss the appeal as moot and sought an order from us remanding the case to the district court with directions to vacate the judgment of conviction and dismiss the indictment. The motion was not joined by the government so dismissal is only, under F.R.A.P. 42(b), to be "upon such terms as may be ... fixed by the court."

▉ It is not disputed by the government that death abated (a) the imposition of prison terms, (b) the levy of a fine, and (c) the addition of a special parole term. Such sanctions are purely penal. They, consequently, were extinguished by Dudley's death, requiring ultimately that the case be remanded as to them, with direction to vacate *ab initio*, as abated, the criminal proceedings. *See United States v. Oberlin*, 718 F.2d 894, 895 (9th Cir.1983):

> Death pending appeal of a criminal conviction abates not only the appeal but all proceedings in the prosecution from its inception. *Durham v. United States*, 401 U.S. 481, 483, 91 S.Ct. 858, 860, 28 L.Ed.2d 200 (1971) (per curiam); *United*

*States v. Bechtel*, 547 F.2d 1379 (9th Cir.1977). In such a case, the appeal is dismissed and the cause remanded to the district court with instructions to vacate the judgment and to dismiss the indictment. *Id.* *See also United States v. Pauline*, 625 F.2d 684, 685 (5th Cir.1980); *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir.1977); *Crooker v. United States*, 325 F.2d 318, 320 (8th Cir. 1963). If the sentence included a fine, this rule of abatement *ab initio* prevents recovery against the estate. *See Pauline*, 625 F.2d at 684; *United States v. Morton*, 635 F.2d 723, 726 (8th Cir.1980). Similarly, an abated conviction cannot be used in any related civil litigation against the estate. *See Pauline*, 625 F.2d at 684.[1]

▉ That recital of what is not in dispute, by process of elimination, brings us to what is warmly contested between counsel for the government and counsel appointed to represent Dudley while he was still alive. Counsel for Dudley insists that all criminal penalties, whether imprisonments or fines, have always been abated by death of the defendant before exhaustion of his or her right to a complete disposition of an appeal of the conviction. *See United States v. Morton*, 635 F.2d 723, 725 (8th Cir.1980). From that, counsel argues, it follows that reimbursement ordered in a criminal context, and side by side with orders mandating fine and imprisonment, should likewise abate. Indeed, the *Morton* case in one respect went even further and held that abatement took place even though the conviction had been finally affirmed, but the fine had not yet been collected when death occurred.[2]

---

1. The total, permanent and unalterable absence of the defendant prevents prosecution of the appeal which in the interests of justice an accused must be allowed to follow through to conclusion. *Oberlin*, at 896. No one would have a litigable interest in substituting for the decedent to seek, through appeal, reversal of the conviction.

2. That abatement of a sentence to the penitentiary would occur is too obvious to require more than the barest mention. *United States v.*

*Pomeroy*, 152 F. 279, 280 (C.C.S.D.N.Y.1907), *rev'd on other grounds, sub nom United States v. New York C. & H. R.R. Co.*, 164 F. 324 (2nd Cir.1908) ("When the punishment for a crime is imprisonment, the death of the convict, of course, puts an end to the punishment...."). A decedent can hardly serve a prison sentence. Identical logic serves to wipe out the parole term. The fine could, of course, in theory at least, be collected from the decedent's estate. Nevertheless, it appears to be accepted that, the fine's purpose being solely to punish an offend-

The Government's response is that the restitution order entered pursuant to 18 U.S.C. § 3579 is unlike a fine or sentence to imprisonment, for its purposes are predominantly restitutionary (even though they may also be penal[3]). The statute is of recent origin, having become effective on its date of enactment, October 12, 1982, and interpretation is not surprisingly rather sparse. One case, *United States v. Oberlin, supra,* has reached a conclusion supportive of the position contended for on behalf of Dudley. But it is supportive only in that the penal character of a forfeiture provision in a sentence called for under 21 U.S.C. § 848(a)(2) (The Comprehensive Drug Abuse Prevention and Control Act of 1970, Continuing Criminal Enterprise section) was held to cause it to abate upon the decease of the defendant found guilty where death occurred even prior to, but within the time for, perfecting an appeal.

Yet there are substantial and, to us, controlling distinctions between 21 U.S.C. § 848, and the statute which engages our attention: 18 U.S.C. § 3579. While § 3579 parallels the Drug Abuse section which appears under a title "Offenses and Penalties," inasmuch as the comparable explanatory language for § 3579 is "Criminal Procedure, Sentence, Judgment and Execution," there is the important distinction that the statute of concern to the *Oberlin* court required that a person convicted "shall *forfeit,*" while 18 U.S.C. § 3579, titled "Order of *restitution* " calls for the defendant "to make restitution to any victim of the offense."

It does not require great perspicacity to appreciate the substantial difference between *restitution* to the person victimized by the crime (who could, as here, be another arm of the government bringing the prosecution, but who, more likely than not, will prove to be a private third party) and *forfeiture,* collectible only by the avenging

United States government bent on punishing an offender.

Hence we are not impressed by purely verbal logic. "A crime is a crime is a crime" simply does not serve to resolve the dispositive issue. Forfeiture has an exclusively punitive, *i.e.,* penal, character. *See, e.g., One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965) ("... a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law."). *Accord, United States v. Oberlin, supra,* at 896. In Dudley's case, however, we are talking about restitution of property owned by or owing to another which normally would be recoverable in civil litigation. The argument that impositions of penalties in criminal cases have heretofore always been abated on death of the accused, even a fully convicted accused who has not yet paid a fine or forfeiture, grows out of the consideration that punishment, incarceration, or rehabilitation have heretofore largely been the exclusive purposes of sentences and so ordinarily should be abated upon death for shuffling off the mortal coil completely forecloses punishment, incarceration, or rehabilitation, this side of the grave at any rate.

It is an old and respected doctrine of the common law that a rule ceases to apply when the reason for its dissipates.[4] Under 18 U.S.C. § 3579, an order of restitution, even if in some respects penal, also, has the predominantly compensatory purpose of reducing the adverse impact on the victim. The consideration would be particularly evident had the victim been a private person but the statute makes no distinction between an out-of-pocket government and a victimized private person.

---

er, not the beneficiaries of his estate, it should not be collected once he dies. It is a case of not visiting the sins of the father on the son.

**3.** Section 3579 of 18 U.S.C. provides that "[t]he court, when sentencing a defendant convicted of an offense under this title ... may order, in

addition to or in lieu of any *other* penalty ... that the defendant make restitution to any victim...." (Emphasis added).

**4.** *Cessante ratione legis, cessat et ipsa lex.*

On the contrary, § 3579(h) explicitly provides that "An order of restitution may be enforced by the United States or a victim named in the order to receive the restitution in the same manner as a judgment in a civil action." While arguably that language would apply if restitution were available under § 3579 only to private parties, the function of the United States being a fiduciary one to aid the victim recover restitution, we regard it as far more likely that the government is not foreclosed from establishing that it has been victimized by the crime and recovering restitution. At any rate, no argument has been advanced on behalf of Dudley that the government may not be a victim under § 3579. *See, e.g., United States v. Wurts,* 303 U.S. 414, 416, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938) ("The Government's right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has 'clearly manifested its intention' [footnote omitted] to raise a statutory barrier.").

We are satisfied, therefore, and hold that the restitution order did not abate by reason of the death of Dudley while the appeal was pending.[5]

However, the quiver of the public defender who has represented Dudley's interests thoroughly and imaginatively contains another arrow or two. With the support of *United States v. Welden,* 568 F.Supp. 516 (N.D.Ala.1983), he contends that the absence of a provision for a jury trial to determine the validity of any defense asserted against a claim of restitution and the amount of restitution that should be made offends the Seventh Amendment preservation of the right of trial by jury where the value in controversy shall exceed $20.00. The question is not one easily resolved. On the one hand, the Seventh Amendment to the United States Constitu-

tion by its term extends to "suits at common law." Here we deal with an extension of criminal relief which may so substantially differ from the normal suit to recover damages or to cause a defendant to disgorge undue or unjust enrichment that the Seventh Amendment may not apply.

In 18 U.S.C. § 3580, governing procedural aspects of the § 3579 restitution relief, the district court is required to consider, *inter alia,* the financial resources of the defendant and the financial needs and earning ability not only of the defendant but of his or her dependents as well. Such considerations not only would be irrelevant in a suit at common law, but reference to them at trial could amount to reversible error. *See, e.g., Washington Annapolis Hotel Co. v. Riddle,* 171 F.2d 732, 740 (D.C.Cir.1948); *Metropolitan Life Ins. Co. v. Banion,* 106 F.2d 561, 568 (10th Cir.1939). It is not enough simply to point out that money may pass hands automatically to make a new remedy the equivalent, for Seventh Amendment purposes, of a suit at common law. *Slack v. Havens,* 522 F.2d 1091, 1096 (9th Cir.1975). Hence strong arguments are available to support the proposition that § 3579 restitution does not violate the Constitution simply because it does not call for a jury to resolve any factual issues.

On the other hand, the Seventh Amendment clearly requires trial by jury even in actions unheard of at common law where they involve rights and remedies of the nature of those traditionally involved in an action at law (rather than in an action at equity or in admiralty). *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). However, a not negligible consideration is whether Congress has provided for enforcement of a statutory right in an ordinary civil action. *See Curtis v. Loether,* 415 U.S. 189, 94 S.Ct.

---

**5.** Counsel for Dudley has contended that, borrowing an aphorism from Lord Mildew, if Congress had meant that a restitution order under 18 U.S.C. § 3579 was not to abate by death, it should explicitly have said so. However, while that argument may on occasion have appeal, it makes no sense here, especially in light of the provisions of § 3579(c): "If the Court decides to

order restitution under this section, the court shall, if the victim is deceased, order that the restitution be made to the victim's estate." We are not prepared to ascribe to Congress an intention that the death of the blameless person should not abate the obligation to reimburse but that the decease of the one to blame should do so.

1005, 39 L.Ed.2d 260 (1974). *Cf. Equal Employment Opportunity Commission v. Detroit Edison Co.*, 515 F.2d 301 (6th Cir. 1975).[6]

In short, the question comes down to whether, where the legislature has created an action unheard of at common law, the rights and remedies involved are of a sort traditionally enforced in an action at law. *See Federal Deposit Insurance Corp. v. New London Enterprises, Ltd.*, 619 F.2d 1099 (5th Cir.1980). There are arguments either way where Congress has permitted restitution by proceeding akin in some respects to a relief at common law.[7] The end effect in the instant case has similarities with that achieved by a judgment in a civil action which prior to the merger of law and equity by the Federal Rules of Civil Procedure would have been regarded as legal in nature. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). In short, the question whether a jury hearing must be allowed to preserve the constitutionality of 18 U.S.C. § 3579 is a tangled one, with no sure outcome short of a Supreme Court decision.

It is indeed the rare case that may generate a single totally new doctrine with potentially widespread effects. A case forcing us to deal with two such questions would constitute an embarras de richesses. Here we are spared the risks of multiplication of novelty since, as far as matters appear to us, there has generally been no effort at the trial in the district court to contest the accuracy of the amount of the restitution ordered ($4,807.50) nor does the question appear to have been preserved as to other factual defenses to an order of restitution.[8] Our decision is without prejudice to a future determination that further

proceedings should be held if, indeed, factual matters concerning the propriety of the restitution amount remain open. In that case, of course, the district judge might be compelled to face the question of whether a jury should be selected to determine issues of fact, and, if so, whether the statute unconstitutionally forecloses empanelling of a jury. However, as things stand at present, there is no issue of fact to be resolved, no function for a jury to perform. Consequently, no question of application of the Seventh Amendment is extant.

It, therefore, is unnecessary for us to reach a further issue raised by *United States v. Welden, supra*. Not only did the district judge in that case rely on the Seventh Amendment in declaring unconstitutional §§ 3579 and 3580, but he independently struck the provisions in light of due process and equal protection requirements of the Fifth Amendment.[9] As with the Seventh Amendment concerns, however, we may save the novel issue, too, for another day, in light of the absence of efforts to contest the accuracy of the amount of the restitution ordered.

For the foregoing reasons, the Motion to Dismiss Appeal as Moot, filed by Dudley's counsel, pursuant to F.R.A.P. 42(b), is granted with respect to all aspects of the proceeding unrelated to the restitution order.

MOTION GRANTED IN PART, DENIED IN PART.

---

**6.** While the Seventh Amendment requires a jury trial in a statutory action, if the statutory rights and remedies are enforceable in an action for damages in an ordinary court of law, nevertheless, not all forms of monetary relief can be characterized as "legal." *Slack v. Havens, supra.*

**7.** Yet here restitution has punitive, or penal, as well as compensatory ends. Exemplary damages may not need to be left to a jury. *Shearer v. Porter*, 155 F.2d 77 (8th Cir.1946).

**8.** *E.g.* no question appears to have been raised as to the correctness of the amount or as to

whether, under § 3580(a) the financial resources of Dudley or his dependents may make restitution partly or wholly inappropriate.

**9.** *E.g.*, "In this Act, the Congress not only was a poor draftsman, but in many respects it unleashed courts without providing them standards, such as rules of evidence, rules of discovery, burdens of proof, requirements of notice, requirements of standing, and the like." *Id.* at 534.