UNITED STATES COURT OF APPEALS
for the Fifth Circuit

---

NO. 92-3700

---

UNITED STATES OF AMERICA
Plaintiff-Appellee,

VERSUS

MELBA ASSET, DECEASED, GARLAND JARVIS, EXECUTOR
OF THE ESTATE OF DECEASED DEFENDANT MELBA ASSET,
Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

(April 27, 1993)

Before JOLLY and DAVIS, Circuit Judges; and LEE,* District Judge

LEE, District Judge:

## I.

### FACTS AND PROCEEDINGS

On January 28, 1992, pursuant to a plea agreement of the same date, Melba Asset pled guilty to one count of a nine-count indictment charging her with uttering altered government checks in

---

*District Judge of the Southern District of Mississippi, sitting by designation.

violation of 28 U.S.C. § 495.[1]  The plea agreement provided that the government would recommend dismissal of the remaining eight counts at the time of sentencing and that Asset would tender to the government, at the time of her guilty plea, the sum of $50,000, representing restitution to the United States Railroad Retirement Board, the victim of Asset's crime.[2]  In accordance with the terms of the plea agreement, Asset paid the government the sum of $50,000 at the time of her plea.  Thereafter, on April 26, 1992, following the entry of her guilty plea but just prior to the date scheduled for sentencing, Asset died.

Pursuant to a joint motion by the government and the executor of Asset's estate, the district court abated the criminal proceeding against Asset and dismissed the indictment pending against her.

---

[1]  Specifically, Asset was charged with forgery of her deceased mother's signature on nine checks which had been mistakenly issued by the United States Railroad Retirement Board.  Asset's mother was a beneficiary of her deceased husband's Railroad Retirement Board benefits and the indictment charged that following her mother's death, Asset received and forged her mother's signature on the benefits checks which the Railroad Retirement Board had mistakenly issued and sent to her mother.

[2]  The agreement set forth the maximum penalties for a violation of 18 U.S.C. § 495, as well as an acknowledgment that the court could order restitution under the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, and provided:

The defendant acknowledges that for a thirty-year period following the death of her mother, Aline Ford, the Railroad Retirement Board continued to pay widow's benefits on a monthly basis to her mother.  The defendant further acknowledges that the benefits wrongfully paid total $99,643.12. The defendant agrees to tender to the government, at the time of her guilty plea, FIFTY THOUSAND AND 00/100 ($50,000) DOLLARS.  This amount represents restitution paid to the Railroad Retirement Board for the overpayment of widow's benefits which may have benefited the defendant and other family members.

2

The court, however, refused a request by the executor for a return of the $50,000 paid by Asset as restitution under the terms of the plea agreement. Relying on United States v. Dudley, 739 F.2d 175 (4th Cir. 1984), and United States v. Cloud, 921 F.2d 225 (9th Cir. 1990), the district court reasoned that restitution paid to the victim of a crime is predominately compensatory in nature rather than penal and, thus, should not abate upon the death of the defendant. According to the court, "[s]ince [Asset] had not been sentenced, the defendant was not being punished, as only the Court can impose punishment by way of sentencing, but was agreeing to compensate her victim." The district court concluded, therefore, that the rule of abatement did not require a return of the $50,000 payment. Asset's executor appeals.

The issue presented on this appeal is whether the trial judge, whom the parties agree properly abated the criminal proceeding against Asset following her death, erred in denying appellant's request for return of the $50,000 paid by Asset under the plea agreement. Finding no error, we affirm.

## II.

### ANALYSIS

It is well established in this circuit that the death of a criminal defendant pending an appeal of his or her case abates, ab initio, the entire criminal proceeding. See United States v. Schuster, 778 F.2d 1132, 1133 (5th Cir. 1985); United States v. Pauline, 625 F.2d 684, 684-85 (5th Cir. 1980); see also United States v. Moehlenkamp, 557 F.2d 126, 127-28 (7th Cir. 1977) (death

3

of defendant during pendency of appeal of right from final judgment of conviction deprives accused of right to appellate decision and requires vacating of conviction and dismissal of indictment); Crooker v. United States, 325 F.2d 318, 320 (1963) ("[T]he death of a defendant produces an abatement of the `cause,' the `action,' the `judgment,' and the `penalty', and not simply of the status or stage which has been reached at the time of death."). This principle of abatement derives, in part, from the premise that

> when an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to [an appellate] decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal, which is an "integral part of [our] system for finally adjudicating [his] guilt or innocence." Griffin v. Illinois, 351 U.S. 12, 18, 76 S. Ct. 585, 590, 100 L.Ed. 891 (1956).

Moehlenkamp, 557 F.2d at 128. See also United States v. Oberlin, 718 F.2d 894, 896 (9th Cir. 1983) (death of criminal defendant pending appeal of right will abate prosecution); Dudley, 739 F.2d at 176 n.1 ("The total, permanent and unalterable absence of the defendant prevents prosecution of the appeal which in the interests of justice an accused must be allowed to follow through to conclusion.").

A further premise of the abatement principle is that the purposes of criminal proceedings are primarily penal -- the indictment, conviction and sentence are charges against and punishment of the defendant -- such that the death of the defendant eliminates that purpose. United States v. Morton, 635 F.2d 723, 725 (8th Cir. 1980). This court has explained the rule of abatement as follows:

4

> When a defendant dies pending direct appeal of his criminal conviction it for many years has been the unanimous view of the lower federal courts and the vast majority of state courts that not only the appeal but also all proceedings had in the prosecution from its inception are abated. In years past, we followed that rule of abatement _ab initio_: we dismissed the appeal and remanded to the District Court with directions to vacate the judgment and dismiss the indictment. Abatement of the entire course of the proceedings has several significant effects: if the sentence included a fine, abatement _ab initio_ prevents recovery against the estate and, ultimately, the heirs; the abated conviction cannot be used in any related civil litigation against the estate; and arguably the family is comforted by restoration of the decedent's "good name."

_Pauline_, 625 F.2d at 684-85.

Though _Pauline_, as well as most abatement cases, addresses abatement of criminal proceedings in the event of a criminal defendant's death during the pendency of an appeal, the rule of abatement applies equally to cases in which a defendant, such as Asset, dies prior to the entry of judgment. _Cf_. _Oberlin_, 718 F.2d at 896 (abatement applied where death occurred after conviction, but before appeal was perfected). The question here, though, is whether this rule of abatement extends to voluntary restitutionary payments by a criminal defendant prior to the entry of judgment and, if not, whether some other principle of law, contract or otherwise, operates to require the return of such payment.

While the oft-repeated statement in these cases that the death of a criminal defendant abates _ab initio_ the entire criminal proceeding might be read to dictate an unconditional and complete return to the status quo ante-indictment, the principle of abatement has not been so applied. Rather, the courts have consistently interpreted the abatement principle to apply only to _penal_ aspects

5

of the criminal proceeding.  Obviously, the death of the defendant abates any unserved portion of a prison term, as well as any parole terms or terms of supervised release.  See, e.g., Dudley, 739 F.2d at 176 n.2 ("That abatement of a sentence to the penitentiary would occur is too obvious to require more than the barest mention.").  Moreover, uncollected fines imposed against the criminal defendant likewise abate upon death.  See, e.g., Schuster, 778 F.2d at 1133 (death of defendant pending appeal abated criminal proceedings; "[w]ith abatement of the criminal proceedings, that fine is no longer collectible and the security for its payment must be released"); Pauline, 625 F.2d at 684 ("[I]f the sentence included a fine, abatement ab initio prevents recovery against the estate and, ultimately, the heirs."); cf. Oberlin, 718 F.2d at 896 (forfeiture aspect of defendant's conviction, being essentially penal, abated along with remainder of defendant's criminal conviction).  Indeed, the Eighth Circuit, in Morton, supra, extended the principle of abatement to a case in which death occurred following conviction and appeal, but prior to the government's collection of the fine imposed againt the defendant as part of his sentence.  Morton, 635 F.2d at 725.  The court there, noting first that "death of a defendant abates the penalty," id., reasoned that because "the death of the defendant forestalls further punishment, [and because] an uncollected fine in a criminal case is comparable to the balance of the defendant's prison sentence[,] the uncollected fine, like the remaining sentence, abates with death,"  id.

Though the <u>Morton</u> court "refused to speculate on the outcome of cases involving partially enforced fines," <u>id.</u> at 725 n.2, the district court in <u>United States v. Bowler</u>, 537 F. Supp. 933 (N.D. Ill. 1982), resolved that while the uncollected portion of a fine imposed against the defendant was abated upon his death following his conviction and appeal, that portion of the fine which defendant had paid prior to his death did not abate. The court explained:

> [T]he rationale for the principle of abatement is that an indictment, conviction and sentence are charges against and punishment of the defendant and if the defendant is dead, there no longer is a justification for them. Thus, where a criminal defendant dies pending appeal of his conviction or dies <u>before a fine is collected</u>, the principle of abatement applies.

<u>Id</u>. at 936 (emphasis supplied). The principle of abatement, however, "does not apply to fines already paid, since the purposes of the fines were served insofar as they denied defendant some of his resources before his death." <u>Id</u>. at 936 n.5. While a number of courts have addressed the applicability of abatement principles to fines, only one court has directly addressed the effect of a defendant's death on an order of restitution. In <u>Dudley</u>, <u>supra</u>, a defendant, convicted of unlawful use of food stamp coupons, was sentenced to a term of imprisonment, with a special parole term, and ordered to pay a fine. Additionally, the court's sentence included an order that the defendant pay restitution to the Department of Agriculture pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663. <u>Dudley</u>, 739 F.2d at 176. Upon the death of the defendant during the pendency of his appeal, his attorney moved for abatement of the criminal proceeding. The

7

*Dudley* court extinguished the imposition of the prison term, the levy of the fine and the special parole term because these sanctions were "purely penal." Id. The court held, though, that the restitution order did not abate by reason of the defendant's death. "Restitution," being a payment to compensate the victim of the crime, was in that court's view distinguishable from "forfeiture" or other penalties, which are intended solely to punish the offender. Id. at 177. The court reasoned:

> In [this] case . . . we are talking about restitution of property owned by or owing to another which normally would be recoverable in civil litigation. The argument that impositions of penalties in criminal cases have heretofore always been abated on death of the accused, even a fully convicted accused who has not yet paid a fine or forfeiture, grows out of the consideration that punishment, incarceration, or rehabilitation have heretofore largely been the exclusive purposes of sentences and so ordinarily should be abated upon death for shuffling off the mortal coil completely forecloses punishment, incarceration, or rehabilitation, this side of the grave at any rate.
>
> It is an old and respected doctrine of the common law that a rule ceases to apply when the reason for it[] dissipates.

Id.

In a somewhat different context, the Ninth Circuit in *Cloud*, supra, rejected a defendant's challenge to a part of his sentence which stated that the unpaid balance of restitution payments ordered by the court under the VWPA would become due upon death. The defendant objected that this provision violated former 18 U.S.C. § 3565(h) (repealed) which provided that an "obligation to pay a fine or penalty ceases upon the death of the defendant." *Cloud*, 921 F.2d at 226. The court, however, found that this "cease

8

upon death" provision applied only to fines or penalties imposed by the government and retained by the government and did not apply to cancel restitution payments outstanding at death.  Id. at 227.  The court reasoned that since "a significant objective of the VWPA is providing full compensation to victims," id. at 226, then applying this "cease upon death" provision would create the possibility of frustating the compensatory goals of the VWPA:  "A person such as Cloud might die with a wealthy estate leaving the victims of his crime uncompensated, and his heirs the recipients of wrongly obtained funds."  Id. at 227.

The government contends that the district court properly applied the rationale of Dudley and Cloud to the facts of the case at bar and correctly concluded that Asset's payment of restitution was compensatory and thus was not subject to the rule of abatement. Appellant insists, however, that the district court's reliance on these cases, and in particular on Dudley, was misplaced.  First, according to appellant, Dudley was wrongly decided since that court's decision to require the payment of restitution despite the abatement of the underlying criminal prosecution was obviously penal and not compensatory.  Secondly, appellant maintains, the rationale of Dudley has been undermined by subsequent decisions of both the Fourth Circuit and the United States Supreme Court which, although not abatement decisions, have characterized restitution as being primarily penal in nature.[3]  Appellant thus reasons that

_____

[3]  The basis for this argument is the Supreme Court's decision in Kelly v. Robinson, 479 U.S. 36, 107 S. Ct. 353, 93 L.Ed.2d 216 (1986), which was cited by the Fourth Circuit in

since restitution is penal in nature, then restitution should be accorded no different treatment than other types of criminal penalties, which are abated upon the death of the offender. The court, however, disagrees.

There is little doubt that, regardless of its form or primary purpose, any form of restitution will have both compensatory and penal aspects. See Cloud, 921 F.2d at 226 (restitution payments authorized under VWPA have both penal and compensatory aspects). However, if the principal objective of the restitution payment is "to restore the victim to his or her prior state of well-being," as is the case with restitution authorized under the VWPA, then the payment may be appropriately categorized as "compensatory," rather

_____

United States v. Bruchey, 810 F.2d 456 (4th Cir. 1987), as holding that "because criminal restitution orders serve predomi- nately `penal' objectives, the obligation is not dischargeable in bankruptcy." Id. at 460 n.*. Although appellant is correct in his statement that Kelly speaks in terms of criminal restitution as having penal aspects, appellant apparently ignores the fact that Kelly, in contrast to the instant case, dealt with court- ordered restitution which formed part of the defendant's sen- tence. Moreover, the Supreme Court noted specifically that the reasoning behind its decision was its conclusion that the resti- tution order at issue in that case, which was not ordered pursu- ant to the VWPA but rather pursuant to a Connecticut statute, was not "for the benefit of the victim," since the Connecticut statute under which the obligation was imposed "[did] not require imposition of restitution in the amount of the harm caused [but] [i]nstead, . . . provide[d] for a flexible remedy tailored to the defendant's situation." Kelly, 107 S. Ct. at 362. Here, how- ever, the restitution paid by Asset was specifically acknowledged by her in the plea agreement as representing "the overpayment of widow's beneifits which may have benefited the defendant and other family members." In contrast to Kelly, the obligation to pay restitution in this case was obviously intended to benefit the victim of the defendant's crime -- i.e., the Railroad Retire- ment Board. Thus, aside from the fact that Kelly was not an abatement case, the facts of that case render it inapposite with respect to this court's resolution of the issues presently before it.

10

than penal.  See Dudley, 739 F.2d at 177 (order of restitution under VWPA, even if in some respects penal, has predominately compensatory purpose of reducing adverse impact on victim).  In United States v. Rochester, 898 F.2d 971 (5th Cir. 1990), this court explained that restitution may be compensatory, or it may be more in the nature of a penalty or fine, depending on the purpose for which the obligation is imposed.

> The restitution imposed pursuant to the VWPA . . . is not in the nature of a fine.  Rather, the purpose of the VWPA is "to ensure that wrongdoers, to the degree possible, make their victims whole."  [United States v.]Hughey, 877 F.2d [1256,] 1261 [(5th Cir. 1989)].  This purpose is effectuated by the payment of the fine to the victim rather than the Government.

Rochester, 898 F.2d at 983.[4]

It seems reasonably clear in the case at bar that the predominate purpose for Asset's payment of $50,000 pursuant to the plea agreement was to compensate the Railroad Retirement Board, at least in part, for losses sustained as a result of her conduct.  Indeed, as noted previously, the plea agreement specifically recited that the $50,000 was payable to the Railroad Retirement Board "for the overpayment of widow's benefits which may have benefited the defendant and other family members."[5]  As such, the restitution

---

[4]  At issue in Rochester was whether prejudgment interest was properly included in an award of restitution under the VWPA. Rochester, 898 F.2d at 982.

[5]  The district court found that although Asset's $50,000 check was made out to the United States Department of Justice and was given by Asset to a United States Attorney, the funds were actually turned over to the Railroad Retirement Board.  Appellant maintains that since the check was made payable to the Department of Justice, and since there is no evidence that it was submitted to the Board, it must be presumed that the government, and not

obligation assumed by Asset under the plea agreement is, in purpose, no different than restitution authorized under the Victim and Witness Protection Act.

This court is in accord with the view espoused in Dudley, which involved VWPA-ordered restitution, that unless the goal of restitution is to punish the defendant, then principles of abatement simply do not apply.  To reiterate, death of a criminal defendant abates any penalty because "death forestalls further punishment."  Morton, 635 F.2d at 725.  And, the estate should not be made to suffer the punishment meted out to the defendant.  In sum, "once the defendant is dead, there is no longer a justification for the [punishment]."  Bowler, 537 F. Supp. at 935 (relying on Morton, 635 F.2d at 727).  Where restitution is intended to compensate the victim, rather than being imposed solely to penalize the defendant, the defendant's death does not affect that purpose; the justification for such restitution survives the defendant's death.  And, in the court's view, requiring that restitution be

the victim, actually received the money.  It follows, according to appellant, that the payment was penal in nature, i.e., akin to a criminal fine.

This court reviews for clear error the district court's finding that Asset's restitution payment was disbursed to her victim.  "A finding of fact is not clearly erroneous if it is plausible in light of the record viewed in its entirety."  United States v. Sherrod, 964 F.2d 1501, 1506 (5th Cir. 1992), cert. denied, 61 U.S.L.W. 3620, 122 L.Ed.2d 791 (1993) (citing Anderson v. Bessemer City, 470 U.S. 563, 573-76, 105 S. Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985)).  Here, though Asset's check was made out to the government, her plea agreement provided that the $50,000 was to be paid to the Railroad Retirement Board for its overpayment of widow's benefits.  Viewing the record in its entirety, the district court's conclusion that the money was disbursed to the Board is plausible and, therefore, will not be upset on appeal.

12

paid in that circumstance would not undermine the purposes of abatement since the goal of the payment is not to punish the defendant, or his estate, but to restore the victim's losses.

Ultimately, however, given the facts of this case, classification of Asset's payment as penal or compensatory is not even necessary, for even an obligation construed as a penalty would not, if paid by the defendant prior to her death, be subject to being returned to the defendant's estate. The rule of abatement has never been applied to require the return of money paid by a defendant prior to his death and has, in fact, been held inapplicable to fines -- obviously penal -- paid by a defendant before his death. See, e.g., Morton, 635 F.2d at 735 (purposes of fines were served where defendant was denied some of his resources prior to death); Crooker, 325 F.2d at 321 (same). It is manifest that the purpose intended to be served by this restitution payment -- compensation of the Railroad Retirement Board for losses caused by Asset -- would be served by permitting the Board to retain this compensation. Abatement principles provide no bar to the Board's retention of the $50,000.

However, resolution of the abatement issue does not end the court's inquiry as appellant has advanced an alternative basis for recovery of the $50,000 payment by Asset. Appellant argues that the parties' rights and obligations under the plea agreement must be analyzed under principles of contract law, which, appellant maintains, dictate that the money paid pursuant to the plea agreement be returned to Asset's estate. According to appellant, the

13

plea agreement between Asset and the government is to be viewed as nothing more than an executory contract which, on account of Asset's death, was never fully performed by the government. And, since the government never performed its obligation under the plea agreement, which was to request that eight counts of the indictment against Asset be dismissed at sentencing, Asset's estate is entitled to recover any performance rendered by her prior to her death.

Both state and federal courts have consistently recognized the analogy which private contracts provide in the construction of plea agreements.[6] "The application of contract law to plea agreements

---

[6]  See, e.g., United States v. Escamilla, 975 F.2d 568, 570 (9th Cir. 1992) ("Plea bargains are contractual in nature and must be measured by contract law principles."); United States v. Robison, 924 F.2d 612, 613 (6th Cir. 1991) ("Plea agreements are contractual in nature.  In interpreting and enforcing them, we are to use traditional principles of contract law."); United States v. Sophie, 900 F.2d 1064, 1071 (7th Cir.), cert. denied, 498 U.S. 843, 111 S. Ct. 124, 112 L.Ed.2d 92 (1990) ("Plea agreements--and, logically, the sentence and immunity agreements that make up the alleged plea agreement in this case--are contracts, . . . and determining the existence and meaning of such contracts is governed by ordinary principles of offer and acceptance . . . ."); Stokes v. Armontrout, 851 F.2d 1085, 1089 (8th Cir. 1988), cert. denied, 488 U.S. 1019, 109 S. Ct. 823, 102 L.Ed.2d 812 (1989) (once defendant enters guilty plea, contract principles often provide useful means by which to analyze the enforceability of plea agreement); United States v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st Cir.), cert. denied, 484 U.S. 989, 108 S. Ct. 510, 98 L.Ed.2d 508 (1987) (when defendant enters into a plea agreement with the government, contractual principles apply insofar as they are relevant in determining what the government owes the defendant); United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986) ("In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts.");  State v. Morales, 804 S.W.2d 331, 332 (Tex. Ct. App. 1991) (plea agreement is essentially a contract); Wright v. McAdory, 536 So. 2d 897, 901 (Miss. 1988) (in context of plea bargaining we rely upon contract model; where prosecution and defense reach plea-

14

is premised on `the notion that the negotiated guilty plea repre-sents a bargained-for quid pro quo.'"  United States v. Escamilla, 975 F.2d 568, 570 (9th Cir. 1992) (quoting United States v. Partida-Parra, 859 F.2d 629, 633 (9th Cir. 1988)).  See also Mabry v. Johnson, 467 U.S. 504, 508-09, 104 S. Ct. 2543, 2546-47, 81 L.Ed.2d 437 (1984) (referring to a plea bargain agreement which had not been embodied in the judgment of a court as "a mere executory agreement" and noting that because each side may obtain advantages when the guilty plea is exchanged for sentencing concessions, "the agreement is no less voluntary than any other bargained-for ex-change").

In this case, the government agreed under the plea bargain agreement that if the court accepted Asset's plea of guilty to count 1 of the indictment, the government "would request the Court to dismiss Counts 2 through 9 at the time of sentencing."  In contract parlance, the government's agreement to request dismissal of eight counts of the indictment was the quid pro quo for Asset's agreement to plead guilty and to pay $50,000 in restitution.  Obviously, the government never performed its part of this bargain because, due to Asset's death, the proceedings never reached the sentencing phase.  Under traditional principles of contract law, where performance on one side of a contract becomes excusably impossible at a time when performance on the other side of the

---

bargain agreement and defendant relies upon agreement, prosecu-tion is bound to its bargain); State v. Nall, 379 So. 2d 731, 733 (La. 1980) (plea bargain is contract between state and one accused of crime).

contract has already been rendered, justice requires that the party excused by impossibility either return the performance rendered or pay its fair value. 18 Samuel Williston, Williston on Contracts § 1972 (Walter H. E. Jaeger ed., 3d ed. 1978). Indeed, where impossibility has resulted in failure of the agreed consideration, there is no principle of law

> "that would give absolution from the obligations of a contract to a party who has received from the other full consideration for a promise which the former has become unable to fulfill, and at the same time protect him in the enjoyment of the consideration paid. The act of God may properly lift from his shoulders the burden of performance, but has not yet been extended so as to enable him to keep the other man's property for nothing."

Id. at § 1974 (quoting Board of Education v. Townsend, 63 Ohio St. 514, 59 N.E. 223 (1900)).

> This circuit has stated:

> Plea bargaining is an accepted folkway of our criminal jurisprudence onto which some, but not all, contract criteria have been superimposed. Analogous to promissory estoppel, plea bargaining must have more substantiality than mere expectation and hope. It must have explicit expression and reliance and is measured by objective, not subjective, standards. . . . [T]he law gives its sanction to such bargains when they are real and not mere figments.

Johnson v. Beto, 466 F.2d 478, 480 (5th Cir. 1972). Consistent with the Beto court's observation that not all elements of contract law apply to plea bargain agreements, this court recently commented in Johnson v. Sawyer, 980 F.2d 1490 (5th Cir. 1992), that

> a plea agreement in a criminal case is not a contract in the civil sense. A breach of a plea agreement may affect such criminal matters as sentencing, withdrawal of a plea, sentencing appeals, and the like; but the breach of a plea agreement never generates civil remedies such as monetary damages or specific performance. . . . [W]e observe in passing that a plea agreement does create a

16

> duty owed by the government to the defendant, and thus a
> standard of care, the breach of which might constitute a
> tort under the right circumstances.

Id. at 1501.

In the case at bar, appellant has requested neither monetary damages nor specific performance nor, for that matter, any other remedy as a result of the government's inability to fulfill its obligation under the plea agreement. As the above cases suggest, traditional principles of contract law are not strictly applicable to plea agreements. Rather, contract principles are generally invoked to hold the government to its obligations under a plea agreement so that the defendant will not suffer prejudice as a result of his or her reliance on it. See Santobello v. New York, 404 U.S. 257, 260, 92 S. Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). That is, the government is not permitted to breach its part of a plea agreement in such a way that frustrates the defendant's reasonable expectations under the plea agreement. See United States v. Chagra, 957 F.2d 192, 194 (5th Cir. 1992) ("`[T]he government's conduct [must be] consistent with what [was] reason-ably understood by the defendant when entering [his] plea of guilty.'" (quoting United States v. Huddleston, 929 F.2d 1030, 1032 (5th Cir. 1992))). Surely in this case, Asset reasonably expected that when the date for sentencing arrived, the government would request that the court dismiss the remaining eight counts of the

17

indictment.[7]  However, she was not deprived of any bargained-for exchange as a result of any breach by the government, but rather as the result of the fortuity of her death prior to sentencing. Moreover, Asset's death prior to sentencing obviated any possible prejudice in terms of the government's performance[8] so that, in this unusual circumstance, resort to contract principles to protect the defendant's reasonable expectations is unnecessary and, in the court's opinion, unwarranted.[9]

### III.

### CONCLUSION

For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

---

[7]  It should be noted, though, that Asset agreed in the plea agreement that she understood that the court was not bound to dismiss any count.  In this regard, compare the decision in Chagra, supra, in which this court concluded that it was not reasonable for a defendant to have understood, based on a statement in his plea agreement that the government would recommend a reduction in his co-conspirator's sentence, that the district court was required to reduce the co-conspirator's sentence, because, "[a]lthough the Government may recommend a particular sentence, such recommendation [is] not . . . binding upon the court." Chagra, 957 F.2d at 195 (citations and internal quotations omitted).

[8]  Appellant argues that Asset's estate will be prejudiced if it is unable to obtain a return of Asset's restitution payment.  In the court's opinion, however, the estate, aside from the fact that it was not a party to the plea agreement, clearly has not been deprived of any bargained-for exchange under the plea agreement. It simply cannot be reasonably contended that Asset's estate had any expectation interest that was thwarted by the government's actions and which would require the application of contract principles to be made whole.

[9]  Indeed, ironically, under the abatement principles discussed supra, all of the counts of the indictment were dismissed as a result of Asset's death.