In re Kenneth M. KOCHEKIAN, Debtor.

BT COMMERCIAL CORPORATION, Plaintiff,

v.

Kenneth M. KOCHEKIAN, Defendant.

Bankruptcy No. B–90–12112 C–7G. Adv. No. A–90–2271 G.

United States Bankruptcy Court, M.D. North Carolina, Greensboro Division.

Jan. 3, 1995.

---

Michael E. Weddington, Amos U. Priester, IV and Susan Pannell McAllister, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, for plaintiff.

Christine L. Myatt, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, NC, for debtor/defendant.

## MEMORANDUM OPINION

JERRY G. TART, Chief Judge.

This matter is before the court on BT Commercial Corporation's ("Plaintiff") Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment, filed June 1, 1994 in The United States Bankruptcy Court for the Middle District of North Carolina; Kenneth M. Kochekian's ("Defendant") Motion for Partial Summary Judgment and Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, filed July 22, 1994; and Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, filed July 29, 1994. All parties agreed to have this matter decided

based on briefs and without hearing. On brief for Plaintiff was Michael E. Weddington, Amos U. Priester, IV, and Susan Pannell McAllister. On brief for Defendant was Christine L. Myatt.

■ There are two issues before the court: 1) Whether the criminal restitution obligations imposed by the United States District Court for the Middle District of North Carolina ("the District Court") against Defendant are non-dischargeable under 11 U.S.C. § 523(a)(7)[1]; and

2) Whether the debt obligations evidenced by the civil judgment entered by the District Court against Defendant are non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

As to whether the obligation evidenced by the criminal restitution order is dischargeable, the parties agree that there are no issues of material fact and that the issue is proper for determination on summary judgment as a matter of law. As to whether the Civil Judgment is non-dischargeable, Plaintiff argues that the Civil Judgment renders all issues under § 523(a)(2)(A) *res judicata*, and that since Defendant has made no response with respect to Plaintiff's arguments as to the Civil Judgment, Defendant concedes this point. While this court does not find that Defendant has conceded as to the non-dischargeability of the Civil Judgment, the court believes that the Civil Judgment is sufficient to render the debt non-dischargeable as a matter of law. This court further finds that Defendant's criminal restitution obligations are non-dischargeable.

## FACTS

Defendant, as President and Chief Executive Officer of Kenyon Home Furnishings, Ltd. ("Kenyon"), participated in a massive fraudulent scheme designed to defraud creditors of Kenyon. As a result of his participation in that scheme, Defendant pled guilty to criminal charges. On August 24, 1990, Judge Frank W. Bullock, United States District Judge for the Middle District of North Carolina, acting under The Sentence Reform Act, sentenced Defendant to a 60 month prison term followed by 3 years of supervised release. In addition to these other penalties, the District Court ordered Defendant to pay restitution of his interest in various listed assets,[2] and $5,000 per month or 75% of his take-home pay, whichever is greater, for the 5 years following his release from prison.[3] In determining the amount of restitution, the District Court found that damages to BT Commercial Corporation exceeded $32,000,000, that Defendant has the ability to earn a salary of at least $79,000 per year, and that Defendant's wife is a medical doctor and has the capacity to support herself and her family. Judgment Including Sentence Under The Sentencing Reform Act, *United States of America v. Kenneth Michael Kochekian*, Case No. Cr–90–90–02–S, at p. 5 (August 24, 1990) (hereinafter "Sentencing Order").

Plaintiff subsequently brought a civil action against Defendant and other participants in the fraudulent scheme in the District Court captioned *BT Commercial Corporation v. Kenneth M. Kochekian, et al.*, Civil Action Number C–89–545–G, alleging, *inter alia*, fraud, deceit, and unfair and deceptive trade practices. On November 4, 1992, the District Court, finding the existence of fraud and grounds for summary judgment against defendants on all counts, entered Summary Judgment for Plaintiff, and set damages at $35,036,606. The District Court then awarded treble damages of $93,329,484. Order and Judgment, *Federal Resources Corporation and Kenyon Home Furnishings, Ltd. v. Ken-*

---

1. This court notes that The Bankruptcy Reform Act of 1994 has amended 11 U.S.C. § 523 by adding § 523(a)(13) which specifically excepts from discharge "any debt ... for any payment of an order of restitution issued under title 18, United States Code." This provision, however, is not retroactive, and, therefore, does not dispose of the issue at hand.

2. Plaintiff argues Defendant should be obligated to pay Plaintiff the value of all the assets listed in Judge Bullock's sentencing order. This argu-

ment is specious at best. The restitution order recited that Defendant was to transfer his *interest* in the listed properties—not the *value* of the properties. The fact that the properties were fully encumbered did not give rise to any type of deficiency claim on behalf of Plaintiff.

3. Judge Bullock ordered the restitution pursuant to the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663 (1986).

*neth Kochekian, James W. Pearce, Elizabeth Contogiannis, and Stephen Palinkas,* C–89–376–G, *BT Commercial Corporation v. Kenneth Kochekian, James W. Pearce, Elizabeth Contogiannis, Stephen Palinkas, and Valencia Chairs, Inc.,* C–89–545–G, *In re Kenyon Home Furnishings, Ltd.,* Bankruptcy Case No. B–89–01438C–7, *BT Commercial Corporation v. Federal Resources Corporation,* Adversary Proceeding No. 90–2151, 2:91CV00253 (September 14, 1993) (hereinafter "Civil Judgment").

## DISCUSSION

### NON–DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(7) OF CRIMINAL RESTITUTION OBLIGATIONS

■ The Bankruptcy Code (the "Code") excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not for actual pecuniary loss...." 11 U.S.C. § 523(a)(7). In *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court held that § 523(a)(7) preserves from discharge restitution imposed by a state court as part of a criminal sentence. While this court recognizes that the Court's holding was influenced by concerns of federalism, *Id.* at 44, 107 S.Ct. at 358, the overall rationale of the case directly supports the proposition that an order for criminal restitution by either a federal *or* state court is non-dischargeable under § 523(a)(7). *See e.g. Kelly,* 479 U.S. at 45, 107 S.Ct. at 358–59 (quoting *In re Moore,* 111 F. 145, 148–49 (W.D.Ky.1901), which stated that "nothing ... would convince [the court] that congress, by any provision of the bankrupt act,[4] intended to permit the discharge, under its operations, of any judgment rendered by a state *or federal* court imposing a fine in the enforcement of criminal laws," and finding that such reasoning was widely accepted at the time of the

enactment of the Code) (emphasis added). *See also United States v. Caddell,* 830 F.2d 36, 39 (5th Cir.1987) (finding that the language in the *Kelly* opinion "extends generally to penal sanctions of restitution without regard to whether the court imposing the sanction is a state or federal court").

Under *Kelly,* in order for a debt to be excepted from discharge under § 523(a)(7), that debt "must satisfy two requirements: (1) [it] must be to and for the benefit of a governmental unit; and (2) [it] must be penal, rather than pecuniary, in nature." *Cisneros v. Cost Control Marketing and Sales Management of Virginia, Inc., et al.,* 862 F.Supp. 1531, 1534 (W.D.Va.1994) (citing *Kelly* ). The first prong of this test is satisfied because Defendant's restitution obligations are for the benefit of the government. The Court in *Kelly* stated that the "criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole." *Kelly,* 479 U.S. at 52, 107 S.Ct. at 362. The *Kelly* Court went on to note that "restitution orders imposed in [criminal] proceedings operate 'for the benefit of' the State." *Id.* at 54, 107 S.Ct. at 363. *See also Cost Control Marketing,* 862 F.Supp. at 1534–35 (finding that restitution, through its deterrent effect, is for the benefit of the government because it ensures compliance with criminal statutes and safeguards the public interest in such compliance); and *In re Duke,* 172 B.R. 575, 577 (Bankr.M.D.Tenn.1994) (citing *Kelly* for the proposition that "criminal restitution orders operate for the benefit of the state rather than as compensation for the victim, and they are part of a sentence designed to serve the penal and rehabilitative interests of the state").

As to the second prong of the *Kelly* test, it is clear that criminal restitution is primarily penal in nature,[5] and that the restitution in

---

4. While the quote refers to the Bankruptcy Act, the Court in *Kelly* noted that the Code had not "silently abrogated" this well-recognized tenet. *Kelly,* 479 U.S. at 47, 107 S.Ct. at 359.

5. The *Kelly* Court recognized that bankruptcy is not the only context in which courts have determined whether restitution orders are "compensatory" or "penal." The Court stated:

Several lower courts have addressed the constitutionality of the federal Victim and Witness Protection Act, 18 U.S.C. § 3579. Under that Act, defendants have no right to a jury trial as to the amount of restitution, even though the Seventh Amendment would require such a trial if the issue were decided in a civil case. [citations omitted]. Every Federal

the case at bar in particular was influenced primarily by penal considerations. Defendant, relies on *United States v. Dudley*, 739 F.2d 175 (4th Cir.1984), for the proposition that restitution is primarily compensatory, and, therefore, not excepted from discharge by § 523(a)(7). Defendant's reliance on *Dudley* is misplaced. *Dudley* was decided on a completely different set of facts and question of law. The court was not considering dischargeability in bankruptcy. Instead, the court was faced with the issue of whether a criminal restitution obligation should abate when a defendant dies, or whether it should become an obligation of his estate. If restitution were considered penal, then the law would require that the debt abate at the death of defendant, as do all criminal proceedings under common law. However, if the restitution obligation were compensatory, defendant's estate would still be liable on the debt.[6] In *Dudley*, the lower court had imposed restitution as part of defendant's sentence. The defendant, however, died while an appeal of his criminal sentence was pending. The court held that, because criminal restitution is primarily compensatory in nature, such an obligation did not abate at the death of the defendant as do the penal aspects of a criminal case. Defendant's estate, therefore, was still obligated to pay the restitution.

Our facts are not only distinguishable from *Dudley*, but are inapposite. *See United States v. Asset*, 990 F.2d 208, 213 n. 3 (5th Cir.1993) (finding, in an abatement case, that restitution was compensatory, and distinguishing *Kelly* by pointing out that *Kelly* was not an abatement case, and further finding that restitution may be compensatory, or it may be more in the nature of a penalty,

depending on the purpose for which it is imposed). In addition, even if the rationale in *Dudley* were applicable, which this court does not believe it is, it is important to note that *Dudley* was decided prior to the holding in *Kelly*. In *Kelly*, the Court remarked:

> Restitution is an effective rehabilitative penalty because it forces the defendant to confront in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused.

*Kelly*, 479 U.S. at 49 n. 10, 107 S.Ct. at 360–61 at n. 10. Furthermore, the Fourth Circuit has commented on the nature of restitution obligations since its ruling in *Dudley*, and since the Supreme Court ruled in *Kelly*.

In *United States v. Bruchey*, 810 F.2d 456, 461 (4th Cir.1987), the Fourth Circuit cited *Kelly* for the proposition that "[c]riminal restitution rests with one foot in the world of criminal procedure and sentencing and the other in civil procedure and remedy, though because it is part of the sentencing process it is fundamentally 'penal' in nature." *See also Cisneros v. Cost Control Marketing and Sales Management of Virginia, Inc.*, 862 F.Supp. 1531, 1534 (W.D.Va.1994) (finding that restitution obligations were primarily penal in nature because they would deter future violations of criminal statutes, and further finding that, in a § 523(a)(7) analysis, it is immaterial whether or not any money reaches the victims). Defendant argues that any finding in *Bruchey* as to the nature of restitution is *dicta*, and should not be read to overrule the rationale in *Dudley*.[7] Again,

---

Court of Appeals that has considered the question has concluded that the criminal defendants contesting the assessment of restitution orders are not entitled to the protections of the Seventh Amendment. [citations omitted].
*Kelly*, 479 U.S. at 53 n. 14, 107 S.Ct. at 363 n. 14. *But see United States v. Dudley*, 739 F.2d 175 (4th Cir.1984) (holding restitution orders were primarily compensatory in abatement proceeding); and *United States v. Asset*, 990 F.2d 208 (5th Cir.1993) (same).

6. The rationale in abatement cases is at least partly grounded on the understanding that restitution, unlike other penalties, has a continuing

purpose beyond the death of the defendant. Obviously incarceration has no further purpose beyond the death of the defendant. Restitution, however, does have a compensatory aspect. Therefore, there is a continuing purpose for restitution obligations after the death of the defendant. *See Asset*, 990 F.2d 208, 212 (5th Cir. 1993) (finding that "it is an old and respected doctrine of the common law that a rule ceases to apply when the reason for it dissipates").

7. Defendant also points out that "[i]t is important to note that the defendant in *Bruchey*, unlike the defendant in *Kelly*, was not in bankruptcy so

this court does not believe that *Dudley* is controlling in the case at bar, and, therefore, it is not necessary to determine whether it is overruled by either *Bruchey* or *Kelly*. However, even assuming arguendo that the rationale in *Dudley* is applicable to this case, *Kelly* and its progeny are dispositive of the issue before the court.

Black's Law Dictionary defines *"dicta"* as "expressions in court's opinion which go beyond the facts before court and therefore are ... not binding in subsequent cases." BLACK'S LAW DICTIONARY 236 (Abridged 5th ed. 1983). The language in *Kelly* as to the nature of restitution is not *dicta*. On the contrary, the Supreme Court's opinion in *Kelly* as to the nature of restitution obligations is at the heart of the Court's rationale. Even if, as Defendant argues, the opinion in *Kelly* rested primarily on concerns with federalism, the determination of the Court that restitution is penal in nature was vital to the Court's conclusion that restitution is an integral part of state criminal prosecutions.

■ The particular facts of the case at bar lend further support to the proposition that the restitution order against Defendant is primarily penal in nature. The District Court found that Plaintiff had suffered damages of over $32,000,000. Sentencing Order, at p. 5 (August 24, 1990). However, under the restitution order, Defendant will pay only $300,000. This is less than one percent of the damages incurred by Plaintiff. Defendant, citing *Asset,* 990 F.2d at 213 (5th Cir. 1993) (finding restitution obligations under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, are compensatory as being primarily intended "to restore the victim to his or her prior state of well-being"), contends that the restitution in this case is compensatory. First, it again should be noted that *Asset* is an abatement case, and, therefore, this court believes the rationale is not applicable to dischargeability in bankruptcy. Furthermore, it is clear that the restitution order against Defendant will

hardly "restore [Plaintiff] to [its] prior state of well being." *Id.* On the contrary, Plaintiff is receiving less than one percent of the damages as determined by Judge Bullock. *See United States v. Vetter,* 895 F.2d 456, 459 (8th Cir.1990) (noting that the restitution order required payment of only $25,000, while the damages were $117,000, and finding that the restitution was primarily penal). Finally, the court in *Asset* distinguished *Kelly* on the grounds that the restitution obligation in *Kelly,* as in the case at bar, was part of defendant's criminal sentence, while, in *Asset,* the restitution was determined by the actual amount of loss. *Cf. United States v. Caddell,* 830 F.2d 36, 39 (5th Cir.1987) (citing *Kelly* for the proposition that restitution is penal, and finding that "there is no principaled distinction, applicable in bankruptcy proceedings, between the imposition of restitution and other types of fines by criminal sentencing authorities").

## COLLATERAL ESTOPPEL

Plaintiff next argues that Defendant's guilty plea and Judge Erwin's Civil Judgment render the non-dischargeability of the debt evidenced by the Civil Judgment *res judicata*. This court agrees.

The Supreme Court has held that collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). In *Combs v. Richardson,* 838 F.2d 112, 115 (1988), the Fourth Circuit set out the test for applying collateral estoppel in dischargeability proceedings. The court stated that collateral estoppel would apply " 'if the bankruptcy court found that: (1) the issue sought to be precluded was the same as that involved in the prior action, (2) that the issue was actually litigated, (3) it was determined by a valid and final judgment, and (4) the determination was essential to the prior judgment.' " *Id.* (quoting *Matter of Ross,* 602 F.2d 604, 607–08 (3rd Cir.1979)).

that the issue of dischargeability under § 523(a)(7) was not before the court." Defendant's Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, at p. 9. It is hardly consistent to distinguish *Bruchey,* which was considering, as this court is, the application of the Victim and Witness Protection Act, but then to argue that *Dudley,* an abatement case, is controlling.

### Defendant's Guilty Plea

■ Section 523(a)(2)(A) excepts from discharge any debt "to the extent obtained by 'false pretenses, a false representation, or actual fraud. . . .' " 11 U.S.C. § 523(a)(2)(A). Applying the *Combs* test to the requirements of § 523(a)(2)(A), Defendant's plea clearly meets the first and last requirement of the test. Defendant pled guilty to fraud, misrepresentation, and deceit resulting in damages to Plaintiff. The offenses to which Defendant pled guilty are not only necessary for a determination of non-dischargeability under § 523(a), but are, in fact, one and the same. The only issue left unresolved by Defendant's guilty plea was the actual amount of damages subject to being excepted from discharge. However, the Civil Judgment, *infra*, determined the amount of these damages.

Furthermore, it is well settled that "[a] guilty plea satisfies the 'actually litigated' requirement for collateral estoppel." *In re Cooper*, 125 B.R. 777 (Bankr.N.D.Ill.1991). *See also In re Roehrich*, 169 B.R. 941, 944 (Bankr.D.N.D.1994) (quoting *In re Boll*, 82 B.R. 107, 108–09 (Bankr.D.N.D.1987), and finding " 'by virtue of collateral estoppel, the requisite elements of a section 523 . . . action may be met by a prior plea of guilty' "). For these same reasons, this court believes Defendant's guilty plea meets the requirement that the issue was determined by a valid and final judgment.

### The Civil Judgment

■ The Civil Judgment also meets the requirements for collateral estoppel under *Combs*. Again, the first and last elements are clearly met.[8] In addition, the summary judgment in the District Court meets the "actually litigated" requirement. For this court to determine that an issue was actually litigated, all that is required is that Defendant had a full and fair opportunity to litigate the issue. *In re Lee*, 90 B.R. 202, 205–06 (Bankr.E.D.Va.1988). In the case at bar, Defendant actively participated in the District Court civil case, and summary judgment was entered against him. Finally, the summary judgment was a valid final judgment as required by *Combs*. *See Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n. 3 (4th Cir.1984) ("For purposes of *res judicata*, a summary judgment has always been considered a final disposition on the merits.").

■ On Counts One, Two, and Four of Plaintiff's complaint in the District Court, the District Court determined Plaintiff's damages to be $35,036,606 less $11,780,335 previously recorded, or $23,256,271. The District Court then awarded treble damages of $93,-329,484.[9] On count three, the District Court awarded damages of $23,256,271. Civil Judgment, 2:91CV00253 (September 14, 1993) (hereinafter "Civil Judgment"). Only the non-trebled portion of the above damages are non-dischargeable under § 523(a)(2)(A). The trebled damages are punitive, and, therefore, dischargeable. *In re Bozzano*, 173 B.R. 990, 998 (Bankr.M.D.N.C.1994). *See also Bugna v. McArthur*, 33 F.3d 1054, 1058 (9th Cir.1994) ("523(a)(2) does not bar discharge of punitive damages . . . [b]ecause punitive damages are not *obtained by* fraud but rather imposed because of it") (emphasis added).

For the reasons stated herein, this court finds that the order for criminal restitution entered by the District Court is non-dischargeable pursuant to § 523(a)(7), and the debt evidenced by the Civil Judgment is non-dischargeable under § 523(a)(2)(A).

An ORDER consistent with this opinion will be entered contemporaneously herewith.

### ORDER

Pursuant to the Memorandum Opinion entered contemporaneously herewith,

IT IS ORDERED that Plaintiff's motion for summary judgment is hereby GRANTED, and Defendant's debts evidenced by the restitution obligations in the Judgment Including Sentence Under The Sentencing Reform Act, *United States of America v. Kenneth Michael Kochekian*, Case No. Cr–90–

---

8. The District Court found in favor of Plaintiff under count three, in which Plaintiff had alleged fraud and deceit.

9. The District Court trebled the $35,036,606 it found in damages, and then subtracted the $11,-780,335 previously recorded to arrive at this figure.

90–02–S, at p. 5 (August 24, 1990), and the non-trebled portion of the judgment ($23,256,271) entered by the Order and Judgment, *Federal Resources Corporation and Kenyon Home Furnishings, Ltd. v. Kenneth Kochekian, James W. Pearce, Elizabeth Contogiannis, and Stephen Palinkas*, C–89–376–G, *BT Commercial Corporation v. Kenneth Kochekian, James W. Pearce, Elizabeth Contogiannis, Stephen Palinkas, and Valencia Chairs, Inc.*, C–89–545–G, *In re Kenyon Home Furnishings, Ltd.*, Bankruptcy Case No. B–89–01438C–7, *BT Commercial Corporation v. Federal Resources Corporation*, Adversary Proceeding No. 90–2151, 2:91CV00253 (September 14, 1993) (hereinafter the "Civil Judgment") are found to be non-dischargeable in Defendant's bankruptcy proceeding. Pursuant to the Victim Witness and Protection Act, any amounts paid to Plaintiff under the District Court's order of restitution shall be set off against the amount of damages awarded in the Civil Judgment. 18 U.S.C. § 3663(e)(2).