IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-7420
_____

MISSISSIPPI POULTRY ASSOCIATION,
INC., ET AL.,

Plaintiffs-Appellees,

versus

EDWARD R. MADIGAN, Secretary of the
United States Department of
Agriculture, ET AL.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

(November 16, 1993)

BEFORE REAVLEY, KING, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

The majority opinion in this case, filed on May 28, 1993 and reported at 992 F.2d 1359, is amended by the addition thereto of the following:

Alternatively, if we accept arguendo the foundation of the Secretary's argumentSQthat the phrase "the same as" is ambiguousSQwe conclude that the Secretary's interpretation of that phrase must fail. The reason it must fail is that the second prong of <u>Chevron, U.S.A v. Natural Resources Defense Council</u> requires the court to determine "whether the agency's answer is based on a permissible

construction of the statute."[1]  To determine here whether the Secretary's interpretation of "the same as" to be synonymous with "at least equal to" is permissible, we must look to the statute as a whole.  In the statute, we find that Congress deliberately and consistently used the words "at least equal to" as a term of art to define the standards that a state poultry inspection process must meet in order to be substituted for the federal inspection process.[2]  And just as deliberately and consistently, Congress used the words "the same as" as a term of art to define the standard that a foreign poultry inspection process must meet for its poultry to be imported here.  Therefore, the use of these different phrases in the PPIA signals an intention to distinguish between the inspection standards to be met by state inspection standards on the one hand and foreign inspection standards on the other. Consequently, for the Secretary to construe "the same as" as an interchangeable synonym of "at least equal to," when the latter phrase is deliberately used in the statute to distinguish that which it refers to from that which the former phrase refers to, is simply not permissible statutory construction.[3]

---

[1]  Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 703 (1984).

[2]  21 U.S.C. §§ 454(c), 460(e).

[3]  See Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17, 24 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting United States v. Wong Kim Bo, 473 F.2d 720, 722 (5th Cir. 1972)).

As ambiguity is the sole underpinning of the Secretary's position, it is important to take another hard look at that issue. A reading of Webster's preferred definitions of "same" reveals that it means "resembling in every way" and "corresponding so closely as to be indistinguishable." Webster also gives "same" as a synonym for "identical." Admittedly, if we do not stop reading at preferred, synonymous definitions but keep going far enough down the list of secondary and tertiary alternative definitions, we eventually find language suggesting that some variations are possible and that "equivalent" is also a synonym.

Nevertheless, if the mere existence of slightly varying secondary or tertiary definitions were permitted to constitute ambiguity for Chevron purposes, Congress could never write an unambiguous statute. A quick glance at any dictionary confirms that very few words have but a single meaning. Certainly workaday adjectives such as "same" are never disposed of with one lonely definition.

If we were to follow the Secretary's primrose path by equating ambiguity with differences between primary definitions and secondary or tertiary definitions in the dictionary, the core issue of this case would be reduced to absurdity: For the agency interpretation to trump Congress, the agency must be entitled to deference; for the agency to be entitled to deference, there must be ambiguity; if every word for which secondary and tertiary meanings are to be found in some English language dictionary is deemed to be ambiguous for Chevron purposes, essentially every

3

non-technical word in every statute would have the potential of being ambiguous; consequently, the agency's definition would trump Congress's word usage every time, no matter how cynical or perverse the agency's frustration of the will of Congress might be. Q.E.D.

This also demonstrates the fallacy of over-emphasizing the dictum in National Railroad Passenger Corp. v. Boston & Maine Corp., out of context.[4] Under National Railroad, alternative dictionary definitions, "each making sense under the statute," merely indicate that we should question the language for ambiguity; they do not compel a per se conclusion of ambiguity. When we thus "question" the language of the instant statute we are led inescapably to conclude that even if the phrase "the same as" might be ambiguous in other contexts, it cannot be ambiguous here. The reason, as stated at the outset of this supplemental opinion, is that here a carefully crafted statute purposefully employs "the same as" as a precise term of art and at the same time employs the Secretary's chosen synonym phrase, "at least equal to" as a precise, distinguishing term of art. Irrespective of what other synonyms the Secretary might be entitled to choose in implementing "the same as" for measuring foreign inspection processes, the one that is not available is "at least equal to." For Congress preempted that phrase by choosing to use it in the statute to apply to state processes and declining to use it to apply to foreign

---

[4] ____ U.S. ____, 112 S.Ct. 1394, 1402, 118 L.Ed.2d 52, 66 (1992) ("The existence of alternative dictionary definitions . . . itself indicates that the statute is open to interpretation.") (emphasis added).

4

processes.

We also reiterate that the instant case does not invite a search for legislative intent. We would be putting the proverbial cart before the horse if we were first to consider legislative intent in testing for ambiguity. For only after the language of a statute is found to be ambiguous are we entitled to launch an extra-statutory search for Congressional intent. The threshold inquiry in a Chevron analysis is, of course, whether Congress's intent is clear ("If the intent of Congress is clear, that is the end of the matter; where the court, as well as the agency, must give effect to the unambiguously expressed of Congress").[5] Here, the plain wording of the PPIA makes the intent of Congress clear as a matter of law. If the language used is clear on its face, "then the first canon is also the last: `Judicial inquiry is complete.'"[6] In Bank of Connecticut v. Germain, the Court rejected the bank's reference to a statute's legislative history, stating simply that interpretation of the statute begins with its words and, if those words are clear, the inquiry is over.

Finally, we reiterate that we cannot accept the proposition that, under the circumstances of the instant case, we should not at least consider as instructive a subsequent Act of Congress. Basically, we find Pierce v. Underwood so distinguishable from the

---

[5]  Chevron, 467 U.S. 842-43.

[6]  Connecticut Nat'l. Bank v. Germain, ____ U.S. ____, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 398 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633, 638 (1989)).

5

instant situation as to be inapposite.[7]  The subsequent legislative pronouncement in <u>Pierce</u> was found in nothing more substantial than a House of Representatives Committee Report, not, as here, in an Act of Congress.  In fact, when rejecting the probative value of the committee report in <u>Pierce</u>, Justice Scalia emphasized that it spoke at most for but one committee of but one house of Congress. That is significantly distinguishable from the instant situation in which a majority of the full membership of both houses of Congress voted to enact a full-fledged statute in which the Secretary's interpretation of "the same as" in § 46(d) was expressly rejected.

We continue to adhere to our affirmance of the district court's summary judgment.


REAVLEY, Circuit Judge, dissents.

---

[7]  487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).