**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 16, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals

## for the Fifth Circuit

_____

m 01-50464

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ANDREW CLYDE PARSONS, ESTATE OF,
AS REPRESENTED BY ITS INDEPENDENT EXECUTOR, PATRICK D. MILLAR,

Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
m W-99-CR-63-1

_____

Before KING, Chief Judge, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DEMOSS, BENAVIDES, STEWART, DENNIS, CLEMENT, and PRADO, Circuit Judges.[*]

JERRY E. SMITH, Circuit Judge:

This case requires us to apply the doctrine of abatement *ab initio* to restitution and forfeiture orders where a criminal defendant dies while his appeal is pending. Concluding that, under the specific facts of this case, all consequences of the untested criminal conviction should abate, we DISMISS the appeal and REMAND with direction to VACATE the judgment of conviction and sentence, including the order of restitution, and to dismiss the indictment. We do not, however, direct the government to return monies paid as part of this particular Preliminary Judgment of Forfeiture.

I.

After a second trial following a vacated conviction, a jury found Andrew Parsons guilty of two counts of arson, four counts of mail fraud, and four counts of money laundering. Parsons allegedly set fire to his property and wrongfully received insurance proceeds to compensate for the loss. In addition to a verdict of guilty, the jury returned a special forfeiture verdict.[1] The district court sentenced Parsons to seventy-eight months' imprisonment, a fine of $75,000, a special assessment of $1,000, restitution of $1,317,834.57 to the defrauded insurance companies, and three years' supervised release.[2]

Parsons then informed the government that he wished to sell the three tracts. The government approved the sale of those tracts for $1,900,000 under a contract that would provide cash at closing of $1,000,000. That sale was completed, and a check for $970,826.90 was given to the United States in return for a release of liens.

The sale in question was completed pursuant to an agreement between Parsons and the United States. The government filed a motion describing the agreement. The motion states, in relevant part:

[B]ecause Defendant Parsons had no other apparent financial means with which to fully pay the Money Judgment in the amount of $970,826.90, the United States of America did not object to the . . . sale of [the three tracts], provided that a [government agent] be present at the real estate closing to receive a cashiers check . . . .

. . .

---

[*] Judge Pickering was appointed to the court after this case was submitted, and he elected not to participate in the decision.

[1] Specifically, the jury found that Parsons had used $346,260 of the unlawfully-derived insurance proceeds, as set forth in counts 1-5 of the in-

(continued...)

[1](...continued)

dictment, to construct a certain building and that he had unlawfully derived $970,826.90 from the offenses in counts 1-10.

[2] Although both parties state that the court issued forfeiture orders originating from the jury's special forfeiture verdict, the order of judgment only lists the imprisonment, fine, and restitution orders. Presumably, the restitution order incorporated the amounts listed in note 1, *supra*.

2

Further, inasmuch as this case remains on appeal at this time, the United States of America agrees that in the event Defendant Parsons prevails in the final determination of this appeal, and no final judgment of forfeiture is entered in this case, that the [government] should return to Defendant Parsons the entire amount of $970,826.90, plus interest . . . .

After the sale, the district court entered a Preliminary Judgment of Forfeiture of $970,-826.90, pursuant to FED. R. CRIM. P. 32.2(b).[3] The order states, in relevant part:

> ORDERED that inasmuch as this case remains on appeal at this time, in the event Defendant Parsons prevails in the final determination of this appeal, and no Final Judgment of Forfeiture is entered in this case, the [government] shall return to Defendant Parsons . . . the entire amount of $970,826.90, plus interest . . . .

While this appeal was pending, Parsons died. This court allowed his estate to substitute itself for him as appellant, and the estate submitted a new appellate brief, arguing that Parsons's death abated the conviction, restitution order, and forfeiture orders. The estate also protected its interests by arguing, in the alternative, that if the restitution and forfeiture

orders were not automatically abated by Parsons's death, the conviction should be reversed on grounds of violation of the Speedy Trial Act and inadequate nexus to interstate commerce.

A panel of this court upheld the restitution order and Preliminary Judgment of Forfeiture and rejected Parsons's other merits issues raised on appeal. *United States v. Estate of Parsons*, 314 F.3d 745, 750 (5th Cir. 2002), *vacated for reh'g en banc*, 333 F.3d 549 (5th Cir. 2003). Recognizing that it was bound by *United States v. Asset*, 990 F.2d 208 (5th Cir. 1993), and *United States v. Mmahat*, 106 F.3d 89 (5th Cir. 1997), the panel concluded that "because the restitution order here is unquestionably compensatory in nature, it survives Parsons's death." *Parsons*, 314 F.3d at 750.[4]

## II.

*Asset*, *Mmahat*, and *Parsons* describe the current state of our abatement jurisprudence. "It is well established in this circuit that the death of a criminal defendant pending an appeal of his or her case abates, *ab initio*, the entire criminal proceeding." *Asset*, 990 F.2d at 210.[5] That is, the appeal does not just disap

---

[3] At the sentencing hearing, the court indicated that the $1.317 million restitution order represented the full amount Parsons owed to his victims and that any sums recovered via forfeiture would apply against that total amount. Because Parsons did not tender any other monies to the government, and because the district court did not enter any other temporary orders, no other portion of the restitution order is encompassed by the Temporary Judgment of Forfeiture.

[4] The panel nonetheless questioned the correctness of those decisions. *Parsons*, 314 F.3d at 750. The panel further questioned the logic of our caselaw in referring to "the strange situation of our reviewing a criminal conviction in what has become a hypothetical case." *Id.* at 748.

[5] *See also Mmahat*, 106 F.3d at 93 ("Normally, the death of a criminal defendant during the pendency of his appeal abates the entire proceeding *ab initio*."); *United States v. Schuster*, 778 F.2d 1132, 1133 (5th Cir. 1985) ("Under the firmly established rule in this circuit, the death of a defendant pending conclusion of the direct criminal appeal (continued...)

pear, and the case is not merely dismissed. Instead, everything associated with the case is extinguished, leaving the defendant "as if he had never been indicted or convicted." *Parsons*, 314 F.3d at 749 (quoting *United States v. Schumann*, 861 F.2d 1234, 1237 (11th Cir. 1988)).

With respect to restitution, we have looked to the purpose of the order to determine whether it abates with the conviction. "When restitution is ordered simply to punish the defendant, it is penal and abates with the rest of his conviction. When it is designed to make his victims whole, however, it is compensatory and survives his death." *Mmahat*, 106 F.3d at 93. Additionally, abatement does not entitle a defendant to monies paid before death as part of a fine or restitution order.[6]

### III.

Despite the common acknowledgment that abatement *ab initio* is a well-established and oft-followed principle in the federal courts,[7]

few courts have plainly articulated the rationale behind the doctrine. Two primary approaches support abatement *ab initio*. The finality principle reasons that the state should not label one as guilty until he has exhausted his opportunity to appeal. The punishment principle asserts that the state should not punish a dead person or his estate. Although the finality principle best explains why criminal proceedings abate at death, finality does not justify the distinction between compensatory and penal restitution orders.

Under the finality rationale, we have described the entitlement to one appeal as follows:

[W]hen an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to our decision, the *interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal*, which is an "integral part of [our] system for finally adjudicating [his] guilt or innocence."

*United States v. Pauline*, 625 F.2d 684, 685

---

[5](...continued)
abates, *ab initio*, not only the appeal, but the entire criminal proceeding.").

[6] *See, e.g.*, *United States v. Zizzo*, 120 F.3d 1338, 1347 (7th Cir. 1997) (regarding fines and forfeitures); *Asset*, 990 F.2d at 214 (regarding restitution); *Schumann*, 861 F.2d at 1236.

[7] In applying *Durham v. United States*, 401 U.S. 481, 483 (1971) (per curiam) (stating that "death pending direct review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from its inception"), *overruled on other grounds*, *Dove v. United States*, 423 U.S. 325 (1976), other circuits follow the doctrine of abatement *ab initio*. *See, e.g.*, *United States v. Wright*, 160 F.3d 905, 908 (2d (continued...)

[7](...continued)
Cir. 1998) (quoting *Durham*, 401 U.S. at 481); *United States v. Logal*, 106 F.3d 1547, 1551 (11th Cir. 1997) ("This circuit has adopted the general rule that the death of a defendant during the pendency of his direct appeal renders his conviction and sentence void *ab initio; i.e.,* it is as if the defendant had never been indicted and convicted."); *United States v. Davis*, 953 F.2d 1482, 1486 (10th Cir. 1992) (quoting *Durham*, 401 U.S. at 483); *United States v. Wilcox*, 783 F.2d 44 (6th Cir. 1986); *United States v. Oberlin*, 718 F.2d 894 (9th Cir. 1983); *United States v. Pauline*, 625 F.2d 684 (5th Cir. 1980); *United States v. Moehlenkamp*, 557 F.2d 126 (7th Cir. 1977).

4

(5th Cir. 1980) (emphasis added, brackets in original) (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)).[8] The defendant's attack on his conviction tests previously unforeseen weaknesses in the state's case or outright errors at trial.[9] Under this rationale, neither the state nor affected parties should enjoy the fruits of an untested conviction.

The second rationale focuses on the precept that the criminal justice system exists primarily to punish and cannot effectively punish one who has died. "[T]he purposes of criminal proceedings are primarily penal—the indictment, conviction and sentence are charges against and punishment of the defendant—such that the death of the defendant eliminates that purpose."[10] The government and other circuits have mentioned this justifi-cation.[11]

Given that the doctrine of abatement *ab initio* is largely court-created and a creature of the common law, the applications of abatement are more amenable to policy and equitable arguments. Neither of the previously-articulated rationales fully explains our current approach to abatement, restitution orders, and fines paid before death. As we will explain, we adopt the finality rationale and adjust our restitution jurisprudence accordingly.

The punishment rationale supports our current distinction between penal and compensatory restitution orders[12] and justifies the line, with respect to fines, drawn at the time of death.[13] Punishment does not, however, adequately explain the other aspect of our abatement jurisprudence—the elimination of the criminal proceedings *against that person*. Presumably, under the punishment rationale, courts could retain the record of conviction and block proceedings that would punish the estate.[14]

---

[8] *Accord United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir. 1977); *see also* Rosanna Cavallaro, *Better Off Dead: Abatement, Innocence, and the Evolving Right of Appeal*, 73 U. COLO. L. REV. 943, 954 (2002) ("The abatement remedy relies significantly on a larger premise: a conviction that cannot be tested by appellate review is both unreliable and illegitimate; the constitutionally guaranteed trial right must include some form of appellate review.").

[9] In *Douglas v. California*, 372 U.S. 353 (1963), and *Evitts v. Lucey*, 369 U.S. 387, 392 (1985), the Court "require[d] the appointment of effective counsel for a criminal appellant pursuing a first appeal of right." *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir. 2000).

[10] *Asset*, 990 F.2d at 211; *see also Mmahat*, 106 F.3d at 93 (stating that "the abatement principle is premised on the fact that criminal proceedings are penal").

[11] *See, e.g.*, *United States v. Dudley*, 739 F.2d 175, 176 n.2 (4th Cir. 1984) ("A decedent can hardly serve a prison sentence."). In its brief, the government makes a similar point: "Put another way, the doctrine of abatement is applied because it serves no purpose to punish a person who is dead."

[12] *Mmahat*, 106 F.3d at 93 ("When restitution is ordered simply to punish the defendant, it is penal and abates with the rest of his conviction.").

[13] Following death, the state retains already-paid fines but does not require payment of outstanding unpaid fines.

[14] The courts could use the punishment rationale (continued...)

The finality principle provides a better explanation why all *prior* proceedings disappear. A defendant's death during appeal forces a court to decide between disregarding a finding of guilt and entering an unreviewed judgment. Presumptions of innocence and a desire to ensure guilt naturally point to extinguishing all criminal proceedings.

The primary justification for the abatement doctrine arguably is that it prevents a wrongly-accused defendant from standing convicted. The Supreme Court and other circuits have recognized this justification for abatement. We now adopt it as the primary reason behind abatement and, by so doing, we reject *Asset*'s and *Mmahat*'s descriptions of the punishment justification.

Accordingly, regardless of its purpose, the order of restitution cannot stand in the wake of Parsons's death. Because he now is deemed never to have been convicted or even charged, the order of restitution abates *ab initio*.[15]

_____

[14](...continued)
to prevent use of the conviction in civil court and to retain the decedent's good name. The former application could be accomplished without eliminating the conviction altogether, and the latter use does not seem significant enough to warrant extinguishing all prior proceedings.

[15] The dissent argues that restitution orders are "expressly compensatory, non-punitive, and equivalent to a civil judgment against a criminal defendant" and criticizes our approach as "treating the restitution order as abatable and therefore impliedly punitive." This response overlooks the approach we have taken in deciding this case. Our aim is to craft a coherent and consistent means of applying abatement *ab initio* to restitution orders. As we have shown, the best explanation for abate-
(continued...)

IV.

Although the government may argue that this approach harms the interests of those allegedly injured, such an argument cannot outweigh the finality rationale. "[T]he goal of the [compensatory restitution] payment is . . . to restore the victim's losses." *Asset*, 990 F.2d at 214. If the restitution order abates with the death of the defendant, those "victims" will not be made whole, or at least not by way of direct restitution from the defendant or his estate.[16]

_____

[15](...continued)
mentSSthe finality rationaleSSdoes not support a distinction between compensatory and punitive awards. Instead, it mandates that all vestiges of the criminal proceeding should disappear.

In contrast, the dissent skips the primary question of how abatement and restitution interact and assumes the continued existence of the compensatory-penal dichotomy. The dissent's citations to *United States v. Bach*, 172 F.3d 520 (7th Cir. 1999), and *Newman v. United States,* 144 F.3d 531 (7th Cir. 1998), suffer from the same problem. Both cases assume that restitution orders should be described as either compensatory or penal. Neither considers the overall purpose behind abatement *ab initio* and how such a purpose would affect *all* restitution orders. The traditional dichotomy cannot remain, however, if we are to craft a consistent regime that incorporates statutory elementsSSsuch as the Victim and Witness Protection ActSS and two forms of equitable doctrine.

[16] The government argues, at length, that the instant restitution order was intended to make whole the victims of Parsons's fraud: "Unlike a fine, restitution does not deprive the estate of money the defendant may have rightfully acquired; instead it removes tainted money that defendant unlawfully obtained . . . ." Examples of such uncompensated victims undoubtedly exist. In *United States v. Logal*, 106 F.3d 1547 (11th Cir. 1997), the court
(continued...)

The government's position may have validity under the punishment rationale, but it has little force if the concern is finality and the right of the defendant to contest his appeal at least once. Any references to the wrongful nature of the defendant and his actions are conditioned on an appellate court's upholding the conviction, assuming the defendant pursues an appeal. The defendant's death during the pendency of appeal pushes a court to nullify all prior proceedings. Despite what may have been proven at trial, the trial is deemed not to have taken place. Thus, at least in the eyes of the criminal court, the defendant is no longer a wrongdoer and has not defrauded or damaged anyone.

These unfortunate situations also create the danger of misusing the term "victim" in different contextsSScivil and criminalSSwith the same force. One is not necessarily a victim of a crime because he suffers a loss at the hands of another. The loss may arise from poor decisions on the part of the alleged victim, poor drafting on the part of the attorneys, or even questionable conduct on the part of the defendant. None of these situations, however, necessarily warrants a criminal conviction. The abatement doctrine provides that one should not be permanently labeled as finally "convicted" while his first appeal is pending. That is to say, in abatement the criminal court essentially abdicates its power over the former

defendant.[17]

## V.

The aforementioned justifications for altering our abatement doctrine rely on equitable rationales. Perhaps more importantly, as the estate argues, our current willingness to let compensatory restitution orders survive the death of the defendant runs contrary to the text of the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663(a)(1)(A).

The VWPA allows a court to enter a restitution order when "sentencing a defendant *convicted* of an offense." 18 U.S.C. § 3663-(a)(1)(A) (emphasis added). If death terminates the criminal case *ab initio*, the defendant no longer stands convicted. One might respond to this natural reading by arguing that "convicted of an offense" has force only on the day on which the restitution order is entered.

---

[16](...continued)
abated a seemingly compensatory restitution order entered against a defendant convicted of numerous illegal financial dealings. Despite the time invested in the trial and the guilty verdict, those whom the decedent allegedly defrauded could not collect through the federal criminal courts.

[17] Merely because the *criminal* proceeding abates, however, does not necessarily mean that an individual who suffered a loss cannot obtain reimbursement in *civil* court. If he can meet the civil court's lower burden of proof, he may receive a judgment from that court. The criminal court that entered the prior reimbursement order, however, should not retain any power over that prior defendant.

One may argue that allowing the estate to substitute for the dead defendant ensures the fair representation of the decent's interests, but such a substitution does not align logically with the abatement of all prior criminal proceedings. Essentially, the substitution doctrine forces the estate to argue about a conviction that no longer exists and requires a court to adjudicate the merits of a proceeding that no longer took place. Although it is not without a cost, requiring victims to argue their case in civil court protects the interests of defendants whose direct appeals are not yet final.

Because the defendant stands convicted on the day the court enters the order, retaining the order after the defendant's death would not conflict with the VWPA.

Additional text of the VWPA, however, suggests that "convicted" should not have force merely at the time of the restitution order. Section 3663(d) references 18 U.S.C. § 3664 as the enforcement mechanism for reimbursement orders. Section 3664(*l*) describes the effect of a conviction on future civil actions: "A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding."

A standard canon of construction "provides that a word used in different parts of the statute should be construed to have the identical meaning throughout the entire statute."[18] If the narrower construction of "convicted" is applied to § 3664(*l*), an estate would be estopped from denying important factual matters in a subsequent civil suit, *even if the underlying conviction had been abated*.[19] Just as a

trial conviction, after abatement, should not estop an estate from mounting a defense in civil court, one whose conviction is abated no longer stands "convicted" for purposes of the VWPA.[20]

## VI.

The estate argues that the finality principle also requires the government to return the money paid pursuant to the Preliminary Judgment of Forfeiture. The government stridently disagrees.

The panel noted that "the doctrine of abatement does not apply to fines, forfeitures, and restitution paid *prior to* a defendant's death." *Parsons*, 314 F.3d at 748 (emphasis added, citations omitted). Fines that have not yet been paid, however, abate in the same manner as do the prior criminal proceedings. *Id*. *Asset* and similar cases have distinguished between fines paid before and after a defendant's death, based on the punishment rationale.[21]

---

[18] *Miss. Poultry Ass'n v. Madigan*, 992 F.2d 1359, 1363 (5th Cir.), *modified*, 9 F.3d 1113 (5th Cir.), *vacated on other grounds for reh'g en banc*, 9 F.3d 1116 (5th Cir. 1993), *opinion on reh'g*, 31 F.3d 293 (5th Cir. 1994) (en banc)

[19] Admittedly, one could argue that "convicted" and "conviction" have different meanings. A defendant may be convicted on a given day and will always be convicted on that day. The conviction, in contrast, may abate or dissolve. This distinction, however, ignores the effect of abatement on either situation. After abatement, the defendant no longer stands convicted on that date, and no (continued...)

[19](...continued)
conviction exists.

[20] The dissent discusses, at length, the Mandatory Victim Restitution Act ("MVRA"). The parties, however, did not argue the MVRA in the context of this case. Instead, they generally focused on the equitable doctrines, how they interacted with one another, and how the *VWPA* affected that analysis. Even if we consider the MVRA, however, it references the same enforcement provision§§18 U.S.C. § 3664§§as does the VWPA. Consequently, using the MVRA as a means of keeping the compensatory-penal dichotomy fails, for the reasons we have discussed.

[21] *Asset*, 990 F.2d at 214 ("The rule of abatement has never been applied to require the return of money paid by a defendant prior to his death and (continued...)

The question is whether the tender to the government of the check for $970,826.90, at the real estate closing, was a voluntary, irrevocable payment, as the government contends, or was, instead, only a means of preserving assets pending the outcome of the appeal. The government argues that by giving the check, "Parsons paid and the government collected the Money Judgment of criminal forfeiture . . . . The United States collected Parsons' payment in full satisfaction of the Money Judgment."

The agreement and the order provide for full return of the money, with interest, if Parsons "prevails in the final determination of this appeal."[22] Although, as explained, we conclude that restitution orders against Parsons should abate with his death, neither the agreement nor the Preliminary Judgment of Forfeiture requires the government to return the already-paid funds.

"[T]he law . . . existing at the time a contract is made becomes a part of the contract

and governs the transaction." *Tex. Nat'l Bank v. Sandia Mortgage Corp.*, 872 F.2d 692, 698 (5th Cir. 1989) (internal citation and quotation marks omitted) (applying Texas law).[23] When the government and Parsons entered into this agreement, abatement did not require the return of penalties paid before a defendant's death.[24] Nothing in the agreement or the specific facts of this case suggests that the parties intended to avoid that pre-existing rule.

Although the estate might receive the funds if Parsons "prevails" on appeal, he has not achieved a victory, taken any action, or made any substantive points worthy of overturning his conviction. Rather, at the time of his death, this court had made no decision on the merits of the appeal. Although, based on the abatement rationale, the restitution orders must abate, Parsons has not "prevailed" in any meaningful sense.

Presumably in an effort to protect his interests, Parsons voluntarily entered into the agreement memorialized in the Preliminary Judgment of Forfeiture. That agreement, however, did not adequately provide for his death and did not indicate that the parties wished to act outside the legal framework at the time they entered into the contract.[25] Con

---

[21](...continued) has, in fact, been held inapplicable to finesSSobviously penalSSpaid by a defendant before his death."); *see also United States v. Zizzo*, 120 F.3d 1338, 1343 (7th Cir. 1997) (stating that fines paid prior to death "are analogous to time served and are not refundable.").

[22] The agreement has two requirements: "[I]n the event Defendant Parsons prevails in the final determination of this appeal, and no Final Judgment of Forfeiture is entered in this case, the [government] shall return to Defendant Parsons . . . the entire amount of $970,826.90, plus interest." The estate has satisfied the second requirement, as no final judgment has been entered. Thus, we address only whether Parsons "prevail[ed] in the final determination of this appeal."

---

[23] We have no occasion here to comment on, and we express no opinion on, a situation in which there is no agreement or order, such as those present in this case, conditioning return of the forfeited sums on the outcome of the appeal.

[24] *See, e.g., Asset*, 990 F.2d at 214 ("The rule of abatement has never been applied to require the return of money paid by a defendant prior to his death . . . .").

[25] This analysis pertains only to Parsons and (continued...)

9

sequently, although Parsons died, we have not validated any of his grounds for appeal, and he has not "prevailed." He is not entitled to the return of the monies paid under the Preliminary Judgment of Forfeiture.

### VII.

Thus, as part of ensuring that every defendant has an opportunity to challenge his conviction by one direct appeal, we expunge the criminal proceedings and the pending punishments attached to those proceedings if the defendant takes an appeal and dies during its pendency. In the instant case, this includes an unpaid restitution order. Based on the particular language of the Preliminary Judgment of Forfeiture, Parsons did not meet the judgment's requirements, so we DENY his request to require the return of sums paid under that order.

This appeal is DISMISSED, and this matter is REMANDED with direction to VACATE the judgment of conviction and sentence, including the order of restitution, and to dismiss the indictment. To the extent that they are inconsistent herewith, *Asset* and *Mmahat* are overruled.

---

[25](...continued)
this particular agreement. Other agreements may contemplate the possibility of the defendant's death during the pendency of an appeal.

DENNIS, Circuit Judge, joined by HIGGINBOTHAM, DAVIS, WIENER, BENAVIDES, and STEWART, Circuit Judges, dissenting in part and specially concurring in part:

I respectfully disagree with the majority's decision to (1) overrule our long-standing circuit precedents of *United States v. Mmahat*, 106 F.3d 89 (5th Cir. 1997) and *United States v. Asset*, 990 F.2d 208 (5th Cir. 1993),[26] which held

---

[26] The majority's unique "finality rationale," even if valid, does not justify overruling *Mmahat* and *Asset*. The majority's *raison D'etre* for creating the "finality rationale" is that "all consequences of the *untested* criminal conviction should abate," maj. slip op. p.2 (emphasis added), so that "neither the state nor affected parties should enjoy the fruits of an *untested* conviction." *Id*. p.5 (emphasis added). In *Mmahat* itself, however, this court has already created a procedure for testing the conviction of a defendant who dies during pendency of the appeal so that compensatory restitution consequences or fruits would not flow from an untested conviction. The *Mmahat* court held that the compensatory restitution order against the deceased defendant did not abate; instead, his heirs' motion to substitute for him and continue the appeal in his place was granted, and his arguments which potentially could result in a reversal of the restitution order were fully considered. *Mmahat*, 106 F.3d at 93. Thus the majority has not shown a sufficient legal reason for overruling *Mmahat* and *Asset* because the perceived evil of an unreviewed and untested compensatory restitution order has been adequately remedied by *Mmahat* itself.

*Mmahat* and *Asset* also have already attained the "finality rationale's" goal of eliminating the punitive effects of an unreviewed criminal conviction by assuring "that the state should not label one as guilty until he has exhausted his opportunity to appeal" maj. slip op. p.4; preventing the "entering [of] an unreviewed judgment" *Id*. p.5; and "preventing a wrongly-accused defendant from standing convicted." *Id*. p.6. Under *Mmahat* and *Asset*, the penal aspects of the judgment of conviction, which label or give the accused status as a "convicted criminal," abate immediately upon the death of the defendant, and, as already noted, the heirs or estate of the deceased can pursue the appeal and take full advantage of the chance to have any judgment of compensatory restitution reviewed and reversed. Thus, the concrete objects and effects sought by the "finality rationale" are already accessible under *Asset* and *Mmahat*. There is no reason to create a new legalistic doctrine, and even if created it does not require overruling those Circuit precedents.

(continued...)

11

that a restitution order, because it is compensatory rather than punitive, does not abate with the defendant's criminal conviction and punishment when he dies while his appeal is pending; and (2) judicially create a rule, contrary to federal statutes and common law, that a judgment requiring a criminal defendant to make

---

[26](...continued)

Contrary to the inference that might be drawn from a casual reading of the majority's citations, the "finality rationale" is a completely novel judicial creation which has not been embraced or even suggested by the other courts. The majority cites *United States v. Pauline*, 625 F.2d 684, 685 (5th Cir. 1980) and *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir. 1977), *See* maj. slip op. p.4, but they do not support or even mention that rationale. *Pauline* and *Moehlenkamp* merely hold that the Supreme Court's decision in *Dove v. United States*, 423 U.S. 325 (1976) to dismiss pending petitions for certiorari upon the petitioner's death, overruling its previous practice of abatement followed in *Durham v. United States*, 401 U.S. 481 (1971), was not meant to alter the longstanding rule of lower federal courts of abatement of the entire criminal proceedings upon death of an appellant during the pendency of his appeal. *Pauline* and *Moehlenkamp* dealt only with the abatement of the punitive aspects of criminal convictions; the question of whether compensatory restitution survives the appellant's death was not presented.

The majority was apparently inspired to create the "finality rationale" by a single law review article. maj. slip op. p.4 (citing and quoting Rosanna Cavallaro, *Better Off Dead: Abatement, Innocence, and the Evolving Right of Appeal*, 73 U. Colo. L. Rev. 943, 954 (2002)). In her article, Ms. Cavallaro argues that the right to appeal from a criminal conviction should be and is evolving into a constitutional right. She sees the adoption of the remedy of abatement *ab initio* by a large majority of courts as an important "strand" which, together with others, "are forceful arguments for formal, legal recognition of an evolution in criminal procedure [toward constitutionalization of the right to appeal]." *Id*. 986. In furthering her argument for the constitutional right to appeal, she says that "[t]he abatement remedy relies significantly on a larger premise: a conviction that cannot be tested by appellate review is both unreliable and illegitimate[.]" *Id*. 954 It does not follow from this statement or the article as a whole that courts should create a "finality rationale" as espoused by the majority; nor does it follow that the dual mechanism provided by *Asset* and *Mmahat*, i.e., abatement ab initio of all punitive consequences of the criminal proceedings together with the right to continue the appeal with respect to the compensatory restitution decree, does not adequately satisfy the needs for reliability and legitimacy in criminal proceedings.

restitution to his victims also abates upon his death.

The well reasoned decisions in *Mmahat* and *Asset* established the sound and just majority rule that, when a person adjudged guilty of a crime dies while his appeal is pending, (1) the trial court's restitution order requiring him to compensate his victims for the harm done them by his crimes does not abate or disappear, because it is compensatory rather than penal; (2) the restitution order continues to have effect as a civil judgment enforceable against his estate; but (3) his estate may move to be substituted in his place and pursue the appeal, which, if successful, will require that the restitution judgment be cancelled. *See Mmahat*, 106 F.3d at 93.

The majority now holds that, when a criminal defendant dies during his appeal, the restitution judgment immediately abates and is voided, leaving his estate the windfall of any fruit of his crime, and requires that his victims go uncompensated for their harm, and leaves in doubt whether they must turn over to the criminal defendant's estate any restitution previously received. *See* Slip Op. at 2, 10.

1.

The majority's decision conflicts with the policy and provisions of the Mandatory Victims Restitution Act of 1996 (MVRA) and the

Victim and Witness Protection Act of 1982 (VWPA)[27] and undermines the Congressional objective of requiring Federal criminal defendants to pay compensatory restitution to the identifiable victims of their crimes.

Congress enacted the VWPA in 1982, 18 U.S.C. § 3663 (1982), to authorize, but not require, district courts, within their discretion, to order restitution to victims of criminal conduct. *Id.* § 3663(a)(1)(A).[28] In determining whether to order restitution, and

---

[27] The MVRA supersedes the VWPA, in part, and mandates restitution with respect to, inter alia, mail fraud crimes (such as those committed by Parsons), of which the defendant is convicted on or after the date of the MVRA's enactment. *See* S. Rep. 104-179, 104th Cong., 2nd Sess. 13, *reprinted in* 1996 U.S. Code Cong. & Admin. News 926 (indicating that the MVRA is designed to further the purposes of the VWPA); Pub. L. No. 104-132 § 211, 110 Stat. 1241 (1996) (stating that the MVRA shall apply to convictions on or after the date of the MVRA's enactment); 18 U.S.C. § 3663A(c)(1)(A) (listing the types of crimes to which the MVRA applies); *United States v. Caldwell*, 302 F.3d 399, 419 (5th Cir. 2002) (holding that mail fraud is a crime to which the MVRA applies). For the reasons discussed below, I believe the MVRA is not an ex post facto law, but a compensatory, non-punitive remedy which applies retroactively to all such convictions regardless of the date of the commission of the crime. In any event, the policy and provisions of the MVRA should be carefully and fully considered in this major policymaking decision having broad future ramifications under the MVRA and VWPA.

[28] The majority argues that the restitution order under this statute should abate because, after the criminal case is abated *ab initio*, the defendant no longer stands "convicted." *See* maj. slip op. p.7. But the language in question on its face uses the term "convicted" in the context of "when [the district court is] sentencing" the defendant. Because Parsons stood convicted during sentencing, the restitution order was issued during sentencing, and the restitution order has the effect of a civil judgment rendered at that time, *see infra* notes 5-11 and accompanying text, the restitution order is valid.

The majority then tries to analogize to section 3664(l), which refers to the effect of a conviction in subsequent proceedings, arguing that the term "convicted" must have the same meaning in both of these sections. But the word "convicted" has no temporal element; the temporal thrust of each section is provided by the context in which the

(continued...)

14

how much, the court was required to consider, along with the loss sustained by each victim, the financial resources and family needs of the defendant. *Id.* § 3663(a)(1)(B). Prior to today's decision herein, a majority of circuits, including this Fifth Circuit, had held that restitution orders under the VWPA were compensatory and therefore non-abatable. *See United States v. Asset, supra; United States v. Mmahat, supra; see also United States v. Christopher*, 273 F.3d 294, 299 (3rd Cir. 2001); *United States v. Johnson*, 1991 U.S. App. LEXIS 17204 (6th Cir. 1991) (unpublished); *United States v. Dudley*, 739 F.2d 175 (4th Cir. 1984). *But see United States v. Logal*, 106 F.3d 1547, 1552 (11th Cir. 1997) (holding that restitution orders are punitive and should abate with the death of a criminal defendant during his appeal).

In 1996, Congress enacted the MVRA, 18 U.S.C. § 3663A (1996), which mandates restitution for certain crimes and clearly indicates that such restitution is compensatory and non-abatable. The MVRA superseded in part the VWPA, with respect to the designated crimes, *Id.* § 3663A(c), and, as its name indicates, mandatorily requires that, in sentencing a defendant convicted of, inter alia, "an offense against property, including any offense committed by fraud or deceit," the court "shall order...that the defendant make restitution to the victim of the offense or, if the victim is

---

[28](...continued)
word "convicted" or "conviction" is used. Thus, the majority's analogy is inherently flawed.

deceased, to the victim's estate." *Id.* §§ 3663A(c), 3663A(a).

Further, the MVRA amended the VWPA to provide that restitution orders under the VWPA shall be issued and enforced in accordance with § 3664, which sets forth the enforcement provisions of the MVRA. *See* § 3663(d). ("An order of restitution made pursuant to this section shall be issued and enforced in accordance with Section 3664."). In each restitution order under the MVRA and the VWPA, as amended, the court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A).[29]

Under the MVRA and the VWPA, as amended, the court's restitution order expressly creates a property right for the victim or his estate which has the effect of a civil judgment against the criminal defendant or his estate. A restitution order is a heritable,[30] assignable,[31] civil judgment "in favor of such victim",[32] and, when

---

[29] The defendant's financial circumstances are relevant only to fixing a payment schedule for the mandatory restitution. 18 U.S.C. § 3664(f)(2)-(4).

[30] The MVRA expressly provides that if the victim is deceased the court shall order restitution to the victim's estate. *Id.* § 3663(a)(1)(A); this provision implies that the right created by the restitution order is heritable property.

[31] *Id.* §3664(g)(2).

[32] Id. § 3664(m)(ii)(B), which provides:

At the request of a victim named in a restitution order, the
(continued...)

16

properly recorded, "shall be a lien on the property of the defendant...in the same manner . . . as a judgment of a court of general jurisdiction. . . ."[33] The judgment of restitution carries potential civil effects of joint and several liability, res judicata or collateral estoppel, and subrogation: When plural defendants contribute to the loss of the victim the court may make each defendant liable for payment of the full amount of restitution.[34] A defendant ordered to make restitution is estopped from denying the essential allegations of the offense in subsequent civil proceedings.[35] An insurer or other person who compensates the victim for loss covered by a restitution order may to the extent of the payment be subrogated to the victim's right against the restitution debtor.[36]

While the foregoing provisions demonstrate that Congress carefully

---

[32](...continued)
clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located, the abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State.

[33] *Id.*

[34] *Id.* § 3664(h).

[35] *Id.* § 3664(l).

[36] *Id.* § 3664(j)(1).

designed the restitution ordered under the MVRA and the VWPA, as amended, to be a compensatory remedy for crime victims, other provisions of § 3664 protect the defendant from possible punitive effects. In case of property loss, the order may require only a return of the property or payment equal to the value of the property.[37] In case of bodily injury, the order may compensate the victim only for specified losses, e.g., medical and therapeutic expenses, lost income, funeral expenses, child care expenses, transportation expenses, and expenses related to the prosecution.[38]

Thus, the court cannot order restitution for compensatory damages related to pain, suffering, mental or emotional distress or for punitive damages. Additionally, any amount paid to a victim under a restitution order shall be reduced by the victim's recovery of compensatory damages for the same loss in civil proceedings.[39]

In sum, an order of restitution under the MVRA or the VWPA, as amended, is expressly compensatory, non-punitive, and equivalent to a civil judgment against a criminal defendant requiring that he compensate his victims for the specified elements of the harm done to them by his offenses. Consequently, the majority's decision conflicts with the statutory scheme by treating the restitution order as abatable and therefore impliedly punitive. The decision

---

[37] *Id.* § 3664(b)(1).

[38] *Id.* § 3664(b)(2).

[39] *Id.* § 3664(j)(2).

18

thereby divests the victims of vested rights established by the restitution order as a civil judgment.  On the other hand, *Mmahat* and *Asset*, which the majority overrules, are  fully consistent with the MVRA, the VWPA, as amended, and their objectives.  The majority's decision plainly clashes with and undermines the Congressional policy implemented by the VWPA and the MVRA.

2.

The majority opinion disregards or refuses to follow the well reasoned opinions of other Circuits that carefully analyze the VWPA and the MVRA and conclude that restitution orders under them are compensatory and do not constitute criminal punishment for ex post facto or abatement purposes.[40]

---

[40] The majority asserts that its "finality rationale. . . . mandates that all vestiges of the criminal proceeding should disappear." maj.op.n.13.  Because the compensatory/penal analysis would not result in total abatement, the majority rejects it summarily. *Id.*

Until the majority's decision rejecting the compensatory/penal analysis, it had been adopted and used unanimously.  *See Mmahat,* 106 F.3d 89, 93 (using the penal-compensatory dichotomy); *Asset* 990 F.2d at 213-14 (same); *see also United States v. Christopher*, 273 F.3d 294, 298-99 (3rd Cir. 2001)(same); *United States v. Logal*, 106 F.3d 1547, 1552 (11th Cir. 1997) (same); *United States v. Dudley*, 739 F.2d 175, 177-78 (4th Cir. 1984) (same); *United States v. Johnson*, 1991 U.S. App. LEXIS 17204 (6th Cir. 1991) (unpublished) (citing *Dudley*). By rejecting the analysis and the unanimous weight of authority, the majority opinion places this Circuit in a *sui generis* position of isolation.

The compensatory/punitive test is part of the well settled doctrine that death abates a criminal penalty because, once the defendant is dead, there is no longer a justification for the punishment of him or his estate; but the defendant's death does not affect the justification for restitution intended only to compensate the victim; accordingly, such restitution survives and its payment will not undermine the purposes of abatement since the goal of the payment is not to punish the defendant, or his estate, but to restore the victim's losses. *See, e.g.,*

(continued...)

Chief Judge Posner, in *United States v. Bach*, 172 F.3d 520 (7ᵗʰ Cir. 1999), succinctly and persuasively stated the reasons that MVRA restitution orders are compensatory, rather than criminal punishment, and therefore cannot run afoul of the ex post facto prohibition.[41] He explained that the MVRA is not penal but is functionally

---

[40](...continued)
*Asset*, 990 F.2d at 214 (citing *United States v. Morton*, 635 F.2d 723, 725, 727 (8th Cir, 1980); *United States v. Bowler*, 537 F.Supp.933, 935 (N.D. Ill. 1982)). Restitution also serves the non-penal purpose of removing benefits derived by wrongdoing from the defendant's estate, which would otherwise be unjustly enriched, and using them to repair the victim's losses. *Christopher*, 273 F.3d at 299 , *cert. denied*, 536 U.S. 964 (2002)("To absolve the estate [of the defendant] from refunding the fruits of the wrongdoing would grant an undeserved windfall.")

Most important, as the text of this dissenting opinion explains, Congress in the MVRA and the VPWA has confirmed the merit of the compensatory/punitive test by providing that judgments of compensatory restitution for crime victims shall have the force and effect of civil judgments, which under the federal and common law do not abate but survive the death of the defendant judgment-debtor.

The majority erroneously claims that it has crafted a "consistent regime that incorporates statutory elements–such as the Victim and Witness Protection Act . . . ." Maj. slip op. at 6 n.13. Instead, the majority has simply expanded the judicially created rule of *ab initio* abatement far beyond its original purpose to, in effect, judicially overrule the national policy and legislated law of restitution of crime victims enacted by Congress in the MVRA and VWPA.

[41] Some courts, without functional analysis or reasoning, treat restitution under the VWPA and MVRA as a criminal penalty. *See United States v. Edwards*, 162 F.2d 87, 89-90 (3rd Cir. 1998) (collecting cases). They rely on formalistic classification of the restitution order as criminal because it issues during the sentencing proceeding; they fail to recognize the modern practice of using civil proceedings as ancillary to criminal actions. *See* Susan R. Klein, *Redrawing the Criminal-Civil Boundary,* 2 Buff. Crim. L.R. 679, 686-89 (1999) (noting the MVRA as an example). Though courts are authorized to issue restitution orders in criminal proceedings, restitution under the MVRA and VWPA is functionally a tort remedy–a streamlining of procedures that allows a victim to recover a compensatory remedy though "a summary proceeding ancillary to a criminal prosecution." *See Bach*, 172 F.3d at 523 (citing, *inter alia*, Carol S. Steiker, *Punishment and Procedure:*
(continued...)

a compensatory torts statute:

> The Act requires the court to identify the defendant's victims and to order restitution to them in the amount of their loss. In other words, definite persons are to be compensated for definite losses just as if the persons were successful tort plaintiffs. Crimes and torts frequently overlap. In particular, most crimes that cause definite losses to ascertainable victims are also torts: the crime of theft is the tort of conversion; the crime of assault is the tort of battery--and the crime of fraud is the tort of fraud. <u>Functionally, the Mandatory Victims Restitution Act is a tort statute, though one that casts back to a much earlier era of Anglo-American law, when criminal and tort proceedings were not clearly distinguished. The Act enables the tort victim to recover his damages in a summary proceeding ancillary to a criminal prosecution. We do not see why this procedural innovation, a welcome streamlining of the cumbersome processes of our law, should trigger rights under the ex post facto clause.</u> It is a detail from a defrauder's standpoint whether he is ordered to make good his victims' losses in a tort suit or in the sentencing phase of a criminal prosecution. It would be different if the order of restitution required the defendant to pay the victims' losses not to the victims but to the government for its own use and benefit; then it would be a fine, which is, of course, traditionally a criminal remedy.

---

[41](...continued)
*Punishment Theory and the Criminal-Civil Procedural Divide*, 85 Geo. L.J. 775, 782-83 (1997)).

   Indeed, the acts within which the MVRA and VWPA are contained were not passed as solely criminal acts. The MVRA was simply one part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which contains both criminal and civil legislation. *See* Pub. L. 104-132, 110 Stat. 1214 (1996). For example, AEDPA contains, among other provisions, sections involving habeas corpus reform and provisions relating to civil lawsuits brought against terrorist states. *Id.* In addition, the VWPA is primarily a civil act providing for compensatory restitution. In other words, both the MVRA and the VWPA were passed as part of legislative enactments that created both civil and criminal reforms.

*Bach*, 172 F.3d at 522-23 (internal citations omitted)(emphasis added).

The Seventh Circuit's decision in *Newman v. United States,* 144 F.3d 531 (7th Cir. 1998), provides further analysis demonstrating that restitution under the MVRA does not qualify as criminal punishment. (1) "Restitution has traditionally been viewed as an equitable device for restoring victims to the position they had occupied prior to a wrongdoer's actions." 144 F.3d at 538 (citing Restatement of Restitution (introductory note) (1937)). "It is separate and distinct from any punishment visited upon the wrongdoer and operates to ensure that a wrongdoer does not procure any benefit through his conduct at others' expense." *Id*. (Citing 1 George E. Palmer, The Law of Restitution § 1.1, at 5 (1978)); (2) The non-punitive character of restitution had been recognized by the Seventh Circuit and other courts in previous cases. *Id.* 538-39 (Citing *United States v. Black*, 125 F.3d 454, 467 (7th Cir. 1997) (restitution under the Child Support Recovery Act of 1992 was not punishment); *United States v. Hampshire*, 95 F.3d 999, 1006 (10th Cir. 1996) (same); *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir.) (The VWPA's purpose is not to punish defendants but to make victims whole to the extent possible); *United States v. Rochester*, 898 F.2d 971, 983 (5th Cir. 1990) (same)); (3) The nature of the restitution order authorized by the VWPA or the MVRA is not a punitive sanction when analyzed under the factors set forth by

*Kennedy v. Mendoza-Martinez*, 371 U.S. 144, 168-69 (1963) for deciding whether a statutory scheme was so punitive in purpose or effect as to transform what was intended as a civil remedy into a criminal penalty. *See Newman*, 144 F.3d at 540 (citing *Kansas v. Hendricks*, 521 U.S. 346 (1997); *Hudson v. United States*, 522 U.S. 93 (1997)).

*Accord: United States v. Nichols*, 169 F.3d 1255 (10th Cir. 1999); *United States v. Arutunoff*, 1F.3d 1112, 1121 (10th Cir. 1993)("The VWPA's purpose is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.")(citing *United States v. Rochester*, 898 F.2d 971, 983 (5th Cir. 1990)).

For similar reasons, the majority of circuits that have addressed whether MVRA or VWPA restitution orders are abatable, decided that, because such orders are compensatory rather than punitive, the death of the defendant during appeal does not cause them to abate. *See United States v. Christopher*, 273 F.3d 294, 298 (3rd Cir. 2001) ("To absolve the estate from refunding the fruits of the wrongdoing would grant an undeserved windfall...abatement should not apply to the order of restitution in this case....");*United States v. Mmahat, supra; United States v. Asset, supra; United States v. Johnson*, 1991 U.S. App. LEXIS 17204 (6th Cir.) (unpublished) (same); *United States*

*v. Dudley*, 739 F.2d 175, 178 (4th Cir. 1984) (same).[42]

3.

The majority's decision is contrary to the general principles of federal and common law pertaining to abatement, survival, and revival of actions and judgments. With respect to a cause of action created by act of Congress, it is well settled that the question of whether it survives the death of a party by or against whom it has been brought is not one of procedure but one which depends on federal substantive law. *Schreiber v. Sharpless*, 110 U.S. 76, 80 (1884); *See* 7C Wright, Miller & Kane §§ 1952 & 1954 (2d ed 1986).

If no specific provision for survival is made by federal law, as in the present case, the cause survives or not according to the principles of common law. *Patton v. Brady*, 184 US 608 (1902); *Ex parte Schreiber*, *supra*. Generally, an action is not abated by the death of a party after the cause has reached a verdict or final judgment and while the judgment stands, 1 Am Jur 2d, Abatement, Survival and Revival § 61, n.26 (citing *Connors v. Gallick*, 339 F.2d 381 (1964); *Smith v. Henger*, 148 Tex 456, 226 S.W. 2d 425, 20 ALR2d 853 (1950), *et al.*), even if the judgment is based on a cause of action that would not have survived had the party died before judgment. *Id.* §61, n.27.(citing *Mayor, etc., of Anniston v. Hurt*,

---

[42] One Circuit court concluded, with little analysis or reasoning, that restitution orders are punitive and therefore should abate when a defendant dies during his appeal. *See United States v. Logal*, 106 F.3d 1547 (11th Cir. 1997).

24

140 Ala 394, 37 So 220 (1903), *et al.*). "So long as the judgment remains in force, the rule on survival has no further application,[] even where the proceedings are stayed by appeal and supersedeas." *Id.,* nn. 28 and 29 (citing authorities).

A restitution order issued under the MVRA has the effect of a judgment "entered in favor of such victim in the amount specified in the restitution order."[43]  It is undisputed that the defendant Parsons's death occurred after the special verdict and restitution order were entered.  Consequently, under the substantive principles of federal and common law pertaining to abatement, survival and revival, the judgment of restitution survived and was not abated by the defendant's death. *Id.*

4.

I respectfully concur in the result reached by the majority opinion in not ordering the government to return sums already paid. Because I would not overrule this Circuit's precedents in *Mmahat* and *Asset* but would adhere to them, I cannot join the majority in reasons related to this point.  As I read those Circuit precedents, the rule of abatement does not apply to require the return of money paid by a defendant prior to his death as forfeiture, fine or restitution. I do not join in the expungement order because I am uncertain as to whether this relief was requested or whether the estate would be entitled to it if it had been prayed for.

---

[43] § 3664(m)(ii)(B).  See note 7, *supra.*

For the foregoing reasons, I respectfully dissent in part and specially concur in part in the majority opinion.