**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 08-4996**

———————

UNITED STATES OF AMERICA,

          Plaintiff – Appellee,

    v.

JOSEPH DIBRUNO, SR.,

          Defendant – Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:06-cr-00430-FDW-2)

———————

Submitted: June 10, 2011         Decided: July 13, 2011

———————

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

———————

Dismissed and remanded with instructions by unpublished per curiam opinion.

———————

David Q. Burgess, LAW OFFICE OF DAVID Q. BURGESS, Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Amy E. Ray, Assistant United States Attorney, Asheville, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case addresses the survivability of an order of restitution following the death pending appeal of a convicted criminal defendant. For the reasons that follow, we dismiss the appeal and remand with instructions.

I.

From 1999 through July 2005, Joseph DiBruno, Sr. ("DiBruno"), and his sons Joseph, Jr., and Nicholas organized and incorporated various corporations and entities, soliciting investors with promises of high rates of return. Some of these entities were operational businesses, but others were merely "shell" entities designed to allow DiBruno and his sons to solicit monies from unsuspecting investors. DiBruno and his sons did not invest investors' funds into the operational businesses; rather, they used the funds they solicited for personal expenditures, defrauding investors of over three million dollars. In August 2007, a federal grand jury returned a second superseding indictment charging DiBruno and his sons with, among other offenses, conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (2006). DiBruno pled guilty, pursuant to a written plea agreement, to the conspiracy charge.

2

Prior to sentencing, DiBruno moved to withdraw his guilty plea, but the district court denied the motion after a hearing at which DiBruno testified. Based on his testimony at the hearing, the district court found DiBruno guilty of criminal contempt, see 18 U.S.C. § 401 (2006); Fed. R. Crim. P. 42(b). The court sentenced DiBruno to sixty months' imprisonment on the conspiracy count, ordered that he pay a $100 special assessment, and ordered that he pay restitution, jointly and severally with his co-defendant sons, in the amount of $3,808,487. The court also sentenced DiBruno to six months' imprisonment on the contempt count, to be served consecutively to the sixty-month prison term on the conspiracy count. DiBruno timely appealed the judgment of conviction and the district court's order of contempt.

In February 2009, while DiBruno's appeal was pending in this court, but before filing an opening appellate brief, DiBruno's counsel filed a suggestion of death, informing us that DiBruno had died. The Government then moved to dismiss the appeal as moot. In response, DiBruno's counsel concurred with the Government's conclusion that the appeal should be dismissed as moot as a result of DiBruno's death. Counsel further asserted that the case should be remanded to the district court with instructions to vacate DiBruno's convictions and dismiss the indictment against him.

The parties disagreed, however, over the appropriate resolution of the order of restitution, and we directed them to file briefs addressing this issue. Having reviewed those briefs and the submissions relative to the Government's motion to dismiss, we conclude that, although DiBruno's convictions and sixty-six month prison sentence abate as a result of his death pending appeal, the restitution order survives.

II.

In United States v. Dudley, 739 F.2d 175, 176 (4th Cir. 1984), this court held that the death of an appellant pending an appeal of his criminal conviction results in the abatement of "not only the appeal but all proceedings in the prosecution from its inception." In such a case, the appeal is to be dismissed and the case remanded to the district court with instructions to vacate the judgment of conviction and dismiss the indictment. Id. An exception to this general directive exists, however, as to any order of restitution included within the criminal judgment. Id. at 178.

In this case, DiBruno timely appealed both the judgment of conviction and the district court's order of criminal contempt, and the appeal was pending in this court at the time of DiBruno's death. Although DiBruno died before his counsel filed an opening appellate brief raising any issues for

4

review, there existed at the time of DiBruno's death at least the possibility that his convictions might be overturned. See United States v. DeMichael, 461 F.3d 414, 417 (3d Cir. 2006) ("When a defendant appeals the judgment of conviction itself . . . or files a general notice of appeal but dies before submitting an opening brief, the possibility remains that the conviction itself might be overturned."); United States v. Pogue, 19 F.3d 663, 665 (D.C. Cir. 1994) (per curiam) ("[A]ppellant had filed a timely appeal before his death; the appeal was not withdrawn; and, had he lived, appellant could have challenged the plea agreement and underlying conviction."). In view of this possibility, we conclude that DiBruno died pending the appeal of his conspiracy and contempt convictions. Accordingly, the general rule of abatement applies, and we therefore grant the Government's motion to dismiss the appeal as moot. We also remand to the district court with instructions to vacate DiBruno's convictions and sixty-six month prison sentence and to dismiss the second superseding indictment as to DiBruno. See Dudley, 739 F.2d at 176. However, fee assessments already paid need not be refunded because they are the equivalent of prison time already served; therefore, the rule of abatement does not apply to any payments already made on the $100 special assessment, and we further instruct that the Government not be ordered to refund any such payments to DiBruno's estate.

5

See United States v. Zizzo, 120 F.3d 1338, 1346-47 (7th Cir. 1997).

### III.

With respect to the order of restitution, DiBruno's counsel suggests that it, too, should abate because failure to abate the order would contravene the principle that death pending appeal abates all proceedings in the prosecution from its inception. Counsel also suggests that allowing the restitution order to survive DiBruno's death would create statutory inconsistency because the acts governing restitution, the Victim and Witness Protection Act of 1982, as amended ("VWPA"), see 18 U.S.C. § 3663 (2006), and the Mandatory Victims Restitution Act of 1996 ("MVRA"), Pub. L. No. 104-132, §§ 201-11, 110 Stat. 1214, 1227-41 (codified in relevant part at 18 U.S.C. §§ 3663A, 3664 (2006)), authorize restitution only for those who are "convicted" of criminal offenses. We disagree.

### A.

We have previously concluded that orders of restitution do not abate by reason of the death of a convicted criminal defendant who dies while his appeal his pending. Dudley, 739 F.2d at 177-78. As Judge Murnaghan explained for the court in Dudley, "[t]he argument that impositions of penalties in criminal cases have heretofore always been abated

6

on death of the accused . . . grows out of the consideration that punishment, incarceration, or rehabilitation have heretofore largely been the exclusive purposes of sentences and so ordinarily should be abated upon death" because "shuffling off the mortal coil completely forecloses punishment, incarceration, or rehabilitation, this side of the grave at any rate." Id. at 177. Recognizing that "[i]t is an old and respected doctrine of the common law that a rule ceases to apply when the reason for it[] dissipates," the court held that the rule of abatement should not apply to orders of restitution because such orders, although contained in judgments of convictions and thus "in some respects penal," have the "predominantly compensatory purpose of reducing the adverse impact [of the defendant's crimes] on the victim." Id.

Although the Courts of Appeals are divided on whether an order of restitution abates when a convicted criminal defendant dies pending direct appeal, compare United States v. Christopher, 273 F.3d 294, 298-99 (3d Cir. 2001) (holding restitution order does not abate); United States v. Johnson, Nos. 91-3287, 91-3382, 1991 WL 131892, at *1 (6th Cir. July 18, 1991) (same); Dudley, 739 F.2d at 178 (same), with United States v. Rich, 603 F.3d 722, 728-31 (9th Cir. 2010) (holding restitution order does abate); United States v. Estate of Parsons, 367 F.3d 409, 415 (5th Cir. 2004) (en banc) (same);

7

*United States v. Logal*, 106 F.3d 1547, 1552 (11th Cir. 1997) (same), *Dudley* is controlling Circuit precedent and thus dictates the result here. See *United States v. Rivers*, 595 F.3d 558, 564 n.3 (4th Cir. 2010) ("[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that." (internal quotation marks omitted)). The *Dudley* decision explicitly excepted orders of restitution from the general rule that "[d]eath pending appeal of a criminal conviction abates not only the appeal but all proceedings in the prosecution from its inception." *Dudley*, 739 F.2d at 176-78. Counsel's first claim is thus foreclosed by *Dudley* and therefore fails.

### B.

Counsel also suggests that, the *Dudley* decision notwithstanding, allowing the order of restitution to survive DiBruno's death would create statutory inconsistency because the VWPA and the MVRA authorize restitution only for those defendants who have been "convicted" of criminal offenses. Counsel thus posits that where a defendant's conviction never becomes final as a result of his death pending appeal, the statutes provide no authority for the defendant to be required to pay restitution. In the absence of such authority, counsel

8

urges, the restitution component of a defendant's sentence also must abate.

Restitution is a statutory remedy based in the VWPA and the MVRA. Enacted in 1982, the VWPA authorized, but did not require, district courts to order restitution to victims when sentencing defendants convicted of criminal offenses. 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to any victim of such offense." (emphasis added)). In 1996, the MVRA, which supersedes the VWPA in part, was enacted. The MVRA requires a district court to order restitution to victims when sentencing defendants convicted of certain criminal offenses. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), (B) ("[W]hen sentencing a defendant convicted of an offense [committed by fraud or deceit[] or . . . in which an identifiable victim or victims has suffered a . . . pecuniary loss], the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." (emphasis added)).

Counsel's argument that these statutes provide no authority for a decedent defendant's estate to be required to pay restitution proceeds from the premise that the term

"convicted" has a specific temporal thrust. Dudley, however, countenanced the view that the import of the term "convicted" is provided by the context in which term is used, and that the pertinent context was "when [the district court was] sentencing" Dudley. At sentencing in October 1983, Dudley stood "convicted" of one drug distribution and several food stamp offenses and was ordered, pursuant to the VWPA, to pay restitution. Dudley, 739 F.2d at 175-76. And although this court abated Dudley's convictions as the result of his death pending appeal, the court did not abate the order of restitution, even though Dudley's convictions were voided as a result of the abatement. Id. at 177-78.

While Dudley issued before the enactment of the MVRA, the court's adoption of this view of the temporal thrust of the term "convicted" applies to orders of restitution issued, as here, under the MVRA. It is a bedrock principle of statutory interpretation that statutes that are in pari materia or relating to the same subject matter are to be interpreted in light of, and consistently with, one another. United States v. Stewart, 311 U.S. 60, 64 (1940). This interpretive principle is especially applicable when two statutes adopt the same vocabulary in reference to the same subject matter. See, e.g., Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756 (1979).

10

Here, the MVRA adopts the same vocabulary—"when sentencing a defendant convicted of an offense"—as used in the VWPA to refer to the same subject matter, namely, the temporal condition precedent for a court to order the defendant to pay restitution. As Dudley interprets the term "convicted" as used in the VWPA with reference to this temporal context, the in pari materia canon directs adoption of the same construction of the term as used in the MVRA. Applying this approach here, because DiBruno stood "convicted" of the conspiracy offense during sentencing and was ordered during sentencing to pay restitution to the victims of that offense, the restitution order is valid and thus survives the abatement of DiBruno's convictions following his death.

C.

Adopting the position of DiBruno's counsel would, we believe, contravene Congress' intent to require Federal criminal defendants to compensate the identifiable victims of their crimes. In Dudley, this court held a restitution order under the VWPA has the "predominantly compensatory purpose of reducing the adverse impact [of the defendant's crimes] on the victim." Dudley, 739 F.2d at 177. A review of the MVRA and VWPA, as amended, confirms that restitution orders continue to be compensatory in nature.

11

The MVRA amended the VWPA to provide that restitution orders under the VWPA are to be issued and enforced in accordance with 18 U.S.C. § 3664, the enforcement provision of the MVRA. 18 U.S.C. § 3663(d). In each restitution order under the MVRA and the VWPA, as amended, the district court must order restitution to "each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Additionally, under the MVRA and VWPA, as amended, the district court's order of restitution creates a property right for the victim that has the effect of a civil judgment against the convicted criminal defendant or his estate. An order of restitution is a heritable, 18 U.S.C. § 3663(a)(1)(A), assignable, 18 U.S.C. § 3664(g)(2), civil judgment "in favor of such victim," id. § 3664(m)(1)(B), and, when properly registered or recorded, shall operate as "a lien on the property of the defendant . . . in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction," id.

Further, an order of restitution carries the civil effects of joint and several liability, collateral estoppel, and subrogation. Where, as here, multiple defendants contribute to a victim's loss, the district court may make each defendant liable for payment of the full restitution amount. Id.

12

§ 3664(h). A defendant ordered to make restitution is estopped from denying the essential allegations of the offense in any subsequent civil proceeding. Id. § 3664(*l*). Additionally, an insurer or other person who compensates the victim for any loss covered by a restitution order may, to the extent of the payment, be subrogated to the victim's right against the restitution debtor. Id. § 3664(j)(1).

Other provisions of the MVRA and VWPA, as amended, protect the defendant from possible punitive effects of a restitution order. For instance, in the case of property loss to the victim, the restitution order may require only a return of the property or payment equal to the value of the property loss. 18 U.S.C. §§ 3663(b)(1), 3663A(b)(1). In the case of bodily injury to the victim, the restitution order may compensate the victim only for certain, enumerated expenses incurred as a result of the offense. Id. §§ 3663(b)(2)-(3), 3663A(b)(2)-(3). Further, any restitution amount paid to a victim under a restitution order must be reduced by the victim's recovery for the same loss in civil proceedings. 18 U.S.C. § 3664(j)(2).

These provisions make clear that an order of restitution under the MVRA or the VWPA, as amended, is expressly non-punitive and the equivalent of a civil judgment against a criminal defendant requiring that he compensate his victims for

13

the specific harms he has done to them by his offenses. See United States v. Bach, 172 F.3d 520, 523 (7th Cir. 1999) (stating that the MVRA requires that "definite persons are to be compensated for definite losses just as if the persons were successful tort plaintiffs"). Because orders of restitution under the MVRA, like their VWPA predecessors, are meant to compensate victims of crime, they do not abate with the death of a convicted criminal defendant pending appeal. See Dudley, 739 F.2d at 177-78. We thus reject counsel's second claim and instruct the district court on remand to leave unaffected the order of restitution.

IV.

Accordingly, the Government's motion to dismiss the appeal is granted and the appeal is dismissed as moot. The case is remanded to the district court with instructions to vacate DiBruno's convictions and sixty-six month prison sentence, dismiss the second superseding indictment as to him, and leave unaffected the order of restitution and any paid portion of the special assessment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

DISMISSED AND REMANDED WITH INSTRUCTIONS

14